JS 44 (Rev. 12/07) (cand rev 1-16-08)  **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Riverport Insurance Company, a Minnesota corporation | Oakland Community Housing, Inc., a California corporation; Cahon Associates, a California limited partnership; (**See attached continued) |

| (b) County of Residence of First Listed Plaintiff _____ <br> (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _____ <br> (IN U.S. PLAINTIFF CASES ONLY) <br> NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE <br> LAND INVOLVED. |
|---|---|

| (c) Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| Sedgwick, Detert, Moran & Arnold LLP, Bruce D. Celebrezze SB# 102181 <br> Brian D. Harrison SB# 148445/Dean McElroy SB# 213133 <br> One Market Plaza, Steuart Tower, 8th Floor, San Francisco, CA 94105 <br> Telephone: (415) 781-7900, Facsimile: (415) 781-2635 | E-filing    BZ    ADR |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government <br> Plaintiff | ☐ 3 Federal Question <br> (U.S. Government Not a Party) |
| ☐ 2 U.S. Government <br> Defendant | ☒ 4 Diversity <br> (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                             and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place <br> of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place <br> of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a <br> Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment <br> & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted <br> Student Loans <br> (Excl. Veterans) <br> ☐ 153 Recovery of Overpayment <br> of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product <br> Liability <br> ☐ 320 Assault, Libel & <br> Slander <br> ☐ 330 Federal Employers' <br> Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product <br> Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle <br> Product Liability <br> ☐ 360 Other Personal Injury | **PERSONAL INJURY** <br> ☐ 362 Personal Injury— <br> Med. Malpractice <br> ☐ 365 Personal Injury — <br> Product Liability <br> ☐ 368 Asbestos Personal <br> Injury Product <br> Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal <br> Property Damage <br> ☐ 385 Property Damage <br> Product Liability | ☐ 610 Agriculture <br> ☐ 620 Other Food & Drug <br> ☐ 625 Drug Related Seizure <br> of Property 21 USC 881 <br> ☐ 630 Liquor Laws <br> ☐ 640 R.R. & Truck <br> ☐ 650 Airline Regs. <br> ☐ 660 Occupational <br> Safety/Health <br> ☐ 690 Other | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal <br> 28 USC 157 <br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 840 Trademark | ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and <br> Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 490 Cable/Sat TV <br> ☐ 810 Selective Service <br> ☐ 850 Securities/Commodities/ <br> Exchange |
| **REAL PROPERTY** <br> ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | **CIVIL RIGHTS** <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ <br> Accommodations <br> ☐ 444 Welfare <br> ☐ 445 Amer. w/Disabilities – <br> Employment <br> ☐ 446 Amer. w/Disabilities – <br> Other <br> ☐ 440 Other Civil Rights | **PRISONER <br> PETITIONS** <br> ☐ 510 Motions to Vacate <br> Sentence <br> **Habeas Corpus:** <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition | **LABOR** <br> ☐ 710 Fair Labor Standards <br> Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt.Reporting <br> & Disclosure Act <br> ☐ 740 Railway Labor Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. <br> Security Act <br> **IMMIGRATION** <br> ☐ 462 Naturalization Application <br> ☐ 463 Habeas Corpus – <br> Alien Detainee <br> ☐ 465 Other Immigration <br> Actions | **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) <br> **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff <br> or Defendant) <br> ☐ 871 IRS—Third Party <br> 26 USC 7609 | ☐ 875 Customer Challenge <br> 12 USC 3410 <br> ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts <br> ☐ 892 Economic Stabilization Act <br> ☐ 893 Environmental Matters <br> ☐ 894 Energy Allocation Act <br> ☐ 895 Freedom of Information <br> Act <br> ☐ 900 Appeal of Fee <br> Determination <br> Under Equal Access <br> to Justice <br> ☐ 950 Constitutionality of <br> State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

| ☒ 1 Original <br> Proceeding | ☐ 2 Removed from <br> State Court | ☐ 3 Remanded from <br> Appellate Court | ☐ 4 Reinstated or <br> Reopened | ☐ 5 another district <br> (specify) | ☐ 6 Multidistrict <br> Litigation | ☐ 7 Appeal to District <br> Judge from <br> Magistrate <br> Judgment |
|---|---|---|---|---|---|---|
| | | | | Transferred from | | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332

Brief description of cause:
Complaint for Declaratory Judgment and Reimbursement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION <br> UNDER F.R.C.P. 23    **DEMAND $** Exceeds $75,000    CHECK YES only if demanded in complaint: <br> **JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE <br> August 13, 2008

SIGNATURE OF ATTORNEY OF RECORD

The John Stewart Company, a California
corporation; Charles Fowlkes, an
individual; Greg Hyson, an individual; and
Loren Sanbord, an individual

        Defendants.

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.        (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.        Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.        Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.        Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.        Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.        Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**        Example:        U.S. Civil Statute: 47 USC 553

Brief Description: Unauthorized reception of cable service

**VII.        Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.        Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

ORIGINAL

FILED

AUG 13 2008

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   SEDGWICK, DETERT, MORAN & ARNOLD LLP
    BRUCE D. CELEBREZZE  Bar No. 102181
2   MICHAEL A. TOPP  Bar No. 148445
    DEAN J. MCELROY  Bar No. 213132
3   One Market Plaza, Steuart Tower, 8th Floor
    San Francisco, California 94105
4   Telephone: (415) 781-7900
    Facsimile:  (415) 781-2635
5
    Attorneys for Plaintiff
6   RIVERPORT INSURANCE COMPANY

E-filing

BZ

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  RIVERPORT INSURANCE COMPANY,       CASE NO.
    a Minnesota corporation,          **CV  08  3883**
12
                                      **COMPLAINT FOR DECLARATORY
13          Plaintiff,                JUDGMENT AND REIMBURSEMENT**

14          v.                        [JURY DEMAND INDORSED HEREON,
                                      Fed.R.Civ.P. 38]
15  OAKLAND COMMUNITY HOUSING,
    INC., a California corporation; CAHON
16  ASSOCIATES, a California limited
    partnership; THE JOHN STEWART
17  COMPANY, a California corporation;
    CHARLES FOWLKES, an individual;
18  GREG HYSON, an individual; and
    LOREN SANBORN, an individual,
19
            Defendants.
20

21          NOW COMES plaintiff Riverport Insurance Company (hereafter "Riverport") and alleges

22  as follows:

23                    I.        JURISDICTION AND VENUE

24          1.       Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as the parties are

25  citizens of different states and citizens or subjects of a foreign state, and the amount in

26  controversy exceeds the sum of $75,000, exclusive of interest and costs.

27

28

SEDGWICK
DETERT, MORAN & ARNOLD LLP

2.    Venue is proper in the Northern District of California pursuant to 28 U.S.C.
§ 1391(a)(2), in that this action seeks a declaration of the parties' rights and obligations under
contracts of liability insurance in connection with a legal action concerning real property in
Oakland, Alameda County, California, and therefore a substantial part of the events or omissions
giving rise to the claim occurred in this district. Alternatively, venue is proper in this district
pursuant to 28 U.S.C. § 1391(a)(3), in that one or more defendants are residents of California and
this district and are therefore subject to personal jurisdiction in this district at the time the action
is commenced.

## II.    PARTIES

3.    Riverport is a corporation organized and existing under the laws of the State of
Minnesota, with its principal place of business in Minneapolis, Minnesota.

4.    Riverport is informed and believes and thereon alleges that defendant Oakland
Community Housing, Inc. ("OCHI") is corporation organized and existing under the laws of the
State of California, with its principal place of business in the County of Alameda, State of
California.

5.    Riverport is informed and believes and thereon alleges that defendant CaHon
Associates ("CaHon") is a limited partnership organized and existing under the laws of the State
of California, with its principal place of business in the County of Alameda, State of California.

6.    Riverport is informed and believes and thereon alleges that defendant The John
Stewart Company ("John Stewart") is a corporation organized and existing under the laws of the
State of California, with its principal place of business in the City and County of San Francisco,
State of California.

7.    Riverport is informed and believes and thereon alleges that defendant Charles
Fowlkes is an individual residing in the County of Alameda, State of California.

8.    Riverport is informed and believes and thereon alleges that defendant Greg Hyson
is an individual residing in the State of Georgia.

9.    Riverport is informed and believes and thereon alleges that defendant Loren
Sanborn is an individual residing in the State of California.



-2-

CASE NO.
COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SF/1526419v1

CASE NO.
COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

III.    PRELIMINARY ALLEGATIONS

A.    The Riverport Insurance Policies

10.    Riverport issued a series of commercial insurance policies ("the Riverport Primary Policies") to named insured Oakland Community Housing, Inc., commencing on May 29, 2005. Both OCHI and CaHon were named insureds under the Riverport policies. The policies issued by Riverport were as follows:

- Policy No. RIC 0006032 for the policy period May 29, 2005 to May 29, 2006 (the "2005-2006 Policy").

- Policy No. RIC 0007125 for the policy period May 29, 2006 to May 29, 2007 (the "2006-2007 Policy").

- Policy No. RIC 0008111 for the policy period May 29, 2007 to May 29, 2008 (the "2007-2008 Policy").

- Policy No. RIC 0009145 for the policy period May 29, 2008 to May 29, 2009 (the "2008-2009 Policy").

11.    Riverport issued a notice of cancellation as to the 2008-2009 policy to become effective August 16, 2008.

12.    The Riverport Primary Policies provided commercial general liability insurance subject to limits of $1,000,000 per occurrence, $1,000,000 for personal and advertising injury to any one person or organization, and a general aggregate limit of $2,000,000.

13.    The Riverport Primary Policies provided coverage pursuant to all of the terms, conditions, limitations, exclusions, and endorsements contained therein. The Riverport Primary Policies stated in part:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

   a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion,

SEDGWICK
DETERT, MORAN & ARNOLD LLP

-4-

investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)**  The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

   **(2)**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments Coverages **A** and **B**.

**b.**  This insurance applies to "bodily injury" and "property damage" only if:

   **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)**  The "bodily injury" or "property damage" occurs during the policy period; and

   **(3)**  Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

-5-

CASE NO.
COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

    **(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    **e.**    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

The terms "bodily injury," "occurrence" and "property damage" are defined as follows in Section V – Definitions:

    **3.**    "Bodily injury" means physical injury, sickness, or disease sustained by a person, including death resulting from any of these. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock sustained by a person, if directly resulting from physical injury, sickness, or disease sustained by that person. [*As amended by the General Liability Broadening Endorsement.*]

             * * *

    **13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

             * * *

    **17.**    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

             * * *

    14.    The Riverport Primary Policies included the following additional terms of coverage under Coverage B – Personal and Advertising Injury Liability:

    **1.**    **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any

-6-

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

CASE NO.
COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

1    "suit" seeking damages for "personal and advertising injury" to
     which this insurance does not apply. We may, at our discretion,
2    investigate any offense and settle any claim or "suit" that may
     result. But:

3
          (1)    The amount we will pay for damages is limited as described
4                in Section **III** - Limits Of Insurance; and

5         (2)    Our right and duty to defend end when we have used up the
                 applicable limit of insurance in the payment of judgments
6                or settlements under Coverages **A** or **B** or medical expenses
                 under Coverage **C**.

7
     No other obligation or liability to pay sums or perform acts or
8    services is covered unless explicitly provided for under
     Supplementary Payments Coverages **A** and **B**.

9
     **b.**    This insurance applies to "personal and advertising injury" caused
10            by an offense arising out of your business but only if the offense
              was committed in the "coverage territory" during the policy period.

11
The term "personal and advertising injury" is defined in part as follows (as amended by the

12
General Liability Broadening Endorsement):

13
     **14.**    "Personal and advertising injury" means injury, including consequential
14              "bodily injury", arising out of one or more of the following offenses:

15                                          *    *    *

16        **c.**    The wrongful eviction from, wrongful entry into, or invasion of the
                   right of private occupancy of a room, dwelling, or premises that a
17                 person occupies by or on behalf of its owner, landlord, or lessor;

18                                          *    *    *

19        15.    The Riverport Primary Policies in effect after May 29, 2006 include an

20   endorsement entitled "Additional Exclusion Endorsement," Form No. MSHSGLCA05 (01/06).

21   The endorsement provides that the insurance provided under Coverage A – Bodily Injury and

22   Property Damage Liability does not apply to the following:

23        **q.    Vermin and Other Pests**

24        "Bodily injury" or "property damage" caused by, resulting from, or in any
          way arising out of or involving, directly or indirectly, vermin, rodents,
25        insects, arachnids, larva, worms (phyla Annelida, Nematoda or
          Platyhelminthes), fungus, mold or other noxious creature or substance.

26
          **r.    Safe, Tenantable and/or Habitable Premises**

27
          "Bodily injury" or "property damage" caused by, resulting from, or in any
28        way arising out of or involving, directly or indirectly, the failure to

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

                                          -7-

                                                                    CASE NO.
          COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

maintain premises in a safe and habitable condition, as required by any statute, ordinance, regulation, rule or common law.

This endorsement also provides that the insurance provided under Coverage B – Personal and Advertising Injury Liability does not apply to the following:

**p.     Constructive Eviction**

"Personal and advertising injury" caused by, resulting from, or in any way arising out of or involving, directly or indirectly, constructive eviction, regardless of the cause of such constructive eviction.

**q.     Habitability and Quiet Enjoyment**

"Personal and advertising injury" caused by, resulting from, or in any way arising out of or involving, directly or indirectly, a breach of the warranty of habitability or a breach of the covenant of quiet enjoyment, regardless of the reason for either such breach.

**r.     Safe, Tenantable and/or Habitable Premises**

"Personal and advertising injury" caused by, resulting from, or in any way arising out of or involving, directly or indirectly, the failure to maintain premises in a safe and habitable condition, as required by any statute, ordinance, regulation, rule or common law.

16.     Riverport also issued a series of commercial excess liability insurance policies ("the Riverport Excess Policies") to OCHI and CaHon commencing on May 29, 2005:

- Policy No. REL 000603 for the policy period May 29, 2005 to May 29, 2006 (the "2005-2006 Policy").

- Policy No. REL 0007126 for the policy period May 29, 2006 to May 29, 2007 (the "2006-2007 Policy").

- Policy No. REL 0008112 for the policy period May 29, 2007 to May 29, 2008 (the "2007-2008 Policy").

- Policy No. REL 0009146 for the policy period May 29, 2008 to May 29, 2009 (the "2008-2009 Policy").

The Riverport Excess Policies provided coverage pursuant to all of the terms, conditions, limitations, exclusions, and endorsements contained therein. The coverage provided by the Riverport Excess Policies was no broader than that provided by any underlying primary policies.

/ / /
/ / /
/ / /
/ / /

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

-8-

CASE NO.
COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

17. The notice of cancellation as to the 2008-2009 Riverport Primary Policy to become effective August 16, 2008, also provided notice of cancellation as to the 2008-2009 Riverport Excess Policy.

18. The Riverport Primary Policies and the Riverport Excess Policies shall be referred to collectively hereafter as the "Riverport Policies."

B.    The Underlying Action

19. Leroy Scroggins and over 50 additional plaintiffs filed a complaint for damages against OCHI, CaHon, John Stewart, Fowlkes, Hyson, and Sanborn in Alameda County Superior Court on July 3, 2008, Case No. RG08396398 ("the *Scroggins* action"). A true and correct copy of the complaint in the *Scroggins* action is attached hereto as Exhibit A.

20. The complaint in the *Scroggins* action alleges that OCHI, CaHon, John Stewart, Fowlkes, Hyson, and Sanborn are liable for damages and other relief in connection with their alleged ownership, maintenance and operation of a low-income residential building known as the California Hotel in Oakland, California.

C.    The Tender of Defense

21. OCHI notified Riverport of the *Scroggins* complaint and requested that Riverport defend and indemnify OCHI, CaHon, Fowlkes, and Hyson. After investigating the matter, Riverport notified OCHI, Cahon, Fowlkes, and Hyson that it would accept the tender of their defense of the *Scroggins* action under a full and complete reservation of rights. Riverport also notified these defendants that it disputed coverage and reserved the right to seek a declaratory judgment from the court.

22. Riverport has incurred and will incur attorneys' fees and other expenses in connection with its defense of OCHI, CaHon, Fowlkes, and Hyson in the *Scroggins* action.

23. Subsequently, Stewart and Sanborn requested that Riverport defend and indemnify them against the *Scroggins* complaint, claiming that they were additional insureds under Riverport Policies. After investigating the matter, Riverport notified Stewart and Sanborn that it would not accept the tender of their defense of the *Scroggins* action. Riverport also

SEDGWICK
DETERT, MORAN & ARNOLD LLP

-9-

CASE NO.
COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

1  notified these defendants that it disputed coverage and reserved the right to seek a declaratory
2  judgment from the court.

3  IV.    FIRST CLAIM FOR RELIEF – DECLARATORY JUDGMENT AS TO JOHN
4                         STEWART AND SANBORN

5       24.    Riverport incorporates herein by reference, as if fully restated, paragraphs 1
6  through 23 above.

7       25.    An actual controversy has arisen and now exists between Riverport, on the one
8  hand, and the defendants, on the other hand, concerning their respective rights and duties under
9  the Riverport Policies.

10       26.    Riverport contends it has no duty to defend John Stewart or Sanborn, or to satisfy
11  any judgment rendered against them in the *Scroggins* action, on the grounds that the Riverport
12  Policies do not apply to the claims asserted against them in the *Scroggins* action, and that
13  Riverport had no duty to issue to John Stewart or Sanborn a notice of cancellation of the 2008-
14  2009 Riverport policies, on the grounds that John Stewart or Sanborn are not a party or a
15  beneficiary to the 2008-2009 Riverport policies.

16       27.    Riverport is informed and believes that defendants John Stewart and Sanborn
17  contend that Riverport is obligated to provide them a defense to the *Scroggins* action, and to
18  indemnify them for any damages up to the policy limits that may be awarded against them in the
19  *Scroggins* action, and that Riverport has a duty to issue to them a notice of cancellation of the
20  2008-2009 Riverport policies.

21       28.    Riverport desires a judicial determination of its rights and duties under the
22  Riverport Policies, if any, with respect to the claims made against John Stewart and Sanborn in
23  the *Scroggins* action and with respect to the notice of cancellation of the 2008-2009 Riverport
24  policies to become effective August 16, 2008.

25       29.    A judicial determination is necessary and appropriate at this time under the
26  circumstances in order that the parties may ascertain their rights and duties as aforementioned.
27  Said controversy is incapable of resolution without judicial adjudication. Accordingly, Riverport
28  has no plain, speedy and adequate remedy at law, and requests a declaratory judgment, adjudging

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1526419v1

-10-

CASE NO.
COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

1   and declaring that Riverport has no duty to defend John Stewart or Sanborn, or to indemnify or

2   satisfy any judgment rendered against them in the *Scroggins* action, or to issue to them a notice

3   of cancellation of the 2008-2009 policies.

4   V.      SECOND CLAIM FOR RELIEF – DECLARATORY JUDGMENT AS TO OCHI,

5                           CAHON, FOWLKES AND HYSON

6          30.     Riverport incorporates herein by reference, as if fully restated, paragraphs 1

7   through 29 above.

8          31.     An actual controversy has arisen and now exists between Riverport, on the one

9   hand, and the defendants, on the other hand, concerning their respective rights and duties under

10  the Riverport Policies.

11         32.     Riverport contends it has no duty to indemnify or to satisfy a judgment for

12  damages against OCHI, CaHon, Fowlkes, or Hyson in the *Scroggins* action, to the extent such

13  damages fall outside the terms of coverage provided by the Riverport Policies.

14         33.     Riverport further contends it has no duty to pay for the cost of compliance with

15  court orders issued against OCHI, CaHon, Fowlkes and Hyson in the *Scroggins* action, to pay for

16  rent rebates or other restitutionary relief or disgorgement ordered by the court, or to bear the cost

17  of other relief sought by the plaintiffs in the *Scroggins* action which falls outside the terms of

18  coverage provided by the Riverport Policies.

19         34.     Riverport is informed and believes that defendants OCHI, CaHon, Fowlkes, and

20  Hyson contend that Riverport is obligated to provide them a defense to the *Scroggins* action, and

21  to indemnify them for any damages up to the policy limits that may be awarded against them in

22  the *Scroggins* action, as well as to satisfy the cost of compliance with court orders issued against

23  OCHI, CaHon, Fowlkes and Hyson in the *Scroggins* action, to pay for rent rebates or other

24  restitutionary relief or disgorgement ordered by the court, or to bear the cost of other relief sought

25  by the plaintiffs in the *Scroggins* action.

26         35.     Riverport desires a judicial determination of its rights and duties under the

27  Riverport Policies, if any, with respect to the claims made against OCHI, CaHon, Fowlkes and

28  Hyson in the *Scroggins* action.



-11-

CASE NO.
COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

1        36.     A judicial determination is necessary and appropriate at this time under the

2   circumstances in order that the parties may ascertain their rights and duties as aforementioned.

3   Said controversy is incapable of resolution without judicial adjudication. Accordingly, Riverport

4   has no plain, speedy and adequate remedy at law, and requests a declaratory judgment, adjudging

5   and declaring (a) that Riverport has no duty to indemnify or to satisfy a judgment for damages

6   against OCHI, CaHon, Fowlkes, and Hyson in the *Scroggins* action, to the extent such damages

7   fall outside the terms of coverage provided by the Riverport Policies; and (b) that Riverport has

8   no duty to pay for the cost of compliance with court orders issued against OCHI, CaHon,

9   Fowlkes and Hyson in the *Scroggins* action, to pay for rent rebates or other restitutionary relief or

10   disgorgement ordered by the court, or to bear the cost of other relief sought by the plaintiffs in

11   the *Scroggins* action which falls outside the terms of coverage provided by the Riverport

12   Policies.

13              VI.     THIRD CLAIM FOR RELIEF – REIMBURSEMENT

14        37.     Riverport incorporates herein by reference, as if fully restated, paragraphs 1

15   through 36 above.

16        38.     Riverport has incurred and will incur attorneys' fees and other expenses in

17   connection with its defense of OCHI, CaHon, Fowlkes and Hyson in the *Scroggins* action, and

18   may incur indemnity which may be paid in connection with resolution of the *Scroggins* action.

19        39.     Riverport had no duty under the Riverport Policies to afford a defense or to pay

20   indemnity to some or all of the claims within the *Scroggins* action, and therefore has an equitable

21   and quasi-contractual right to be reimbursed by them for some or all attorneys' fees, costs, and

22   other expenses including any indemnity which may be paid or incurred by Riverport in the

23   defense and/or settlement of the *Scroggins* action, pursuant to *Buss v. Superior Court*, 16 Cal.4th

24   35, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997), and related cases.

25                           PRAYER FOR RELIEF

26        WHEREFORE, plaintiff Riverport Insurance Company prays for relief as follows:

27

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

28

-12-

1    1.    For a judgment that, by reason of the terms, conditions, exclusions and limitations
2    of the Riverport Policies, Riverport has no duty to defend John Stewart or Sanborn with respect
3    to the *Scroggins* action;

4    2.    For a judgment that, by reason of the terms, conditions, exclusions and limitations
5    of the Riverport Policies, Riverport has no duty to indemnify and/or to satisfy any judgment that
6    may be rendered against John Stewart or Sanborn in the *Scroggins* action;

7    3.    For a judgment that, by reason of the terms, conditions, exclusions and limitations
8    of the Riverport Policies, Riverport has no duty to provide John Stewart or Sanborn with notice
9    of cancellation of the 2008-2009 Riverport Policies;

10    4.    For a judgment that, by reason of the terms, conditions, exclusions and limitations
11    of the Riverport Policies, Riverport has no duty to indemnify and/or to satisfy a judgment for
12    damages against OCHI, CaHon, Fowlkes and Hyson in the *Scroggins* action, to the extent such
13    damages fall outside the terms of coverage provided by the Riverport Policies;

14    5.    For a judgment that, by reason of the terms, conditions, exclusions and limitations
15    of the Riverport Policies, that Riverport has no duty to indemnify or to pay for the cost of
16    compliance with court orders issued against OCHI, CaHon, Fowlkes and Hyson in the *Scroggins*
17    action, to pay for rent rebates or other restitutionary relief or disgorgement ordered by the court,
18    or to bear the cost of other relief sought by the plaintiffs in the *Scroggins* action which falls
19    outside the terms of coverage provided by the Riverport Policies;

20    6.    For a judgment that, by reason of the terms, conditions, exclusions and limitations
21    of the Riverport Policies, that Riverport is entitled to restitution and reimbursement from OCHI,
22    CaHon, Fowlkes, and Hyson for some or all sums expended in defense or settlement or
23    satisfaction of a judgment in the *Scroggins* action;

24    7.    On all causes of action, for interest, including prejudgment interest;

25    8.    On all causes of action, for costs incurred herein; and

26    9.    For such other and further relief as the Court deems just and proper.

27

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

-13-

1  DATED: August13, 2008          SEDGWICK, DETERT, MORAN & ARNOLD LLP

2

3
                                  By:
4                                      Bruce D. Celebrezze
                                       Michael A. Topp
5                                      Dean J. McElroy
                                       Attorneys for Plaintiff
6                                      RIVERPORT INSURANCE COMPANY

7
                            **DEMAND FOR JURY TRIAL**
8
       Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff Riverport Insurance
9
   Company hereby demands a jury trial for this action.
10

11 DATED: August13, 2008          SEDGWICK, DETERT, MORAN & ARNOLD LLP

12

13
                                  By:
14                                     Bruce D. Celebrezze
                                       Michael A. Topp
15                                     Dean J. McElroy
                                       Attorneys for Plaintiff
16                                     RIVERPORT INSURANCE COMPANY

17

18

19

20

21

22

23

24

25

26

27

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP    28

                                       -14-
CASE NO.
                     COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

# EXHIBIT A

1  JOHN MURCKO (SBN 47008)
   2831 Telegraph Avenue
2  Oakland, California 94609
   Telephone: (510) 465-2241
3  Attorney for Plaintiffs

4  STEPHEN PERELSON (SBN 43032)
   285 Miller Avenue
5  Mill Valley, California 94941
   Telephone: (415) 999-5737
6  Attorney for Plaintiffs

7            SUPERIOR COURT OF THE STATE OF CALIFORNIA

8              IN AND FOR THE COUNTY OF ALAMEDA

9

10  LEROY SCROGGINS, JACKIE          Case No.  08396398
    CUMMINGS, RODNEY STENSON,
11  PATRICIA WEATHERBY, EDWARD
    DICKENS, JOHN HINES, EDWARD     COMPLAINT FOR INJUNCTION AND
12  DIXON, JEFFREY ROBINSON, LILLIE DAMAGES
    MAE SINGLETON, ARTHUR LEE
13  BUNTON, LEROY WILLIAMS,          1.  Injunction Pursuant to
    ROBERT BELL, JEFFREY ROLIN,          Revenue and Taxation Code
14  EDWARD GRIFFIN, BILLY R.             17058 (and Regulatory
    JOHNSON, MICKEY MARTIN,              Agreement)
15  MICHAEL NELSON, TERESA           2.  Breach of Warranty of
    JOHNSON, STANLEY LA RUE HUFF,        Habitability-Written
16  FREDERICK HOWARD, LEE V.             Contract-Negligence
    JENKINS, CLARENCE WOODARD,       3.  Negligent Maintenance
17  BERTHA M. WALKER, HERMAN             of the Premises
    GOLDEN, JR., RONALD PEOPLES,     4.  Intentional Infliction
18  GEORGE CLINTON, OTIS                 of Emotional Distress
    BLACKSHEER, MITCHELL             5.  Nuisance-Negligence
19  STEPHENS, ANDREW ARAMBURO,       6.  Violation of Statutory
    GEORGE REYNOLDS, KATHERINE           Duty-Intentional
20  MARSH, EDGAR HANNA, ROLAN        7.  Breach of Warranty of
    GOODRUM, TED DIXON, LAURA            Habitability-Intentional
21  VALENZUELA, TAMI FORREST,        8.  Breach of Covenant of
    ELMORE SHIVERS, JESSE POWELL,        Good Faith and Fair
22  DUANE ANDERSON, BERNADETTE           Dealing
    THOMPSON, MAREIO DAVIS,          9.  Unfair Business Practice
23  GEORGE STRINGER, DAVID           10. Negligence-Personal Injury
    McQUILLING, PHYLIS McMILLON,     11. Private Nuisance-Intentional
24                                   12. Accounting

                                1
              Complaint for Injunction and Damages

1 | DALLAS MILLER, JR., MITCHELL
STEWART, GABRIEL JOSEPH
2 | JOHNSON, EUGENE SWANN     , JAMES
CUNNINGHAM, ROBIN MENETOE,
3 | TOM BROWN, JEFFREY MONIZ,
YVONNE BROWN,

4

        Plaintiffs,

5

6     vs.

7 | OAKLAND COMMUNITY HOUSING,
INC., CAHON ASSOCIATES, JOHN
STEWARD COMPANY, CHARLES
8 | FOWLKES, GREG HYSON, LAURA
SANBORN, and DOES I through X
9 | inclusive,

10     Defendants.

    _____/

11

(Jury Trial Requested)
(Damages for Each Plaintiff
Are In Excess of $50,000 each)

12     1.    Individual Tenant Plaintiffs bring this action for injunction and for damages

13 against Defendants for causing, maintaining and continuing a private nuisance, for breach of

14 Defendants' duty to comply with health, safety, housing and building codes in the operation of

15 residential rental property, their duty to maintain dwelling units in decent, safe and sanitary

16 conditions it for human habitation, for breach of contract, breach of statutory and implied

17 warranty of habitability, negligence, intentional infliction of emotional distress, for breach of

18 the covenant of good faith and fair dealing, for personal injury due to negligence, and for

19 violation of Revenue and Taxation Code Section 17058 and Regulatory Agreement between

20 Cahon Associates and California Tax Credit Allocation Committee (hereafter "CTCAC").

21                 **PARTIES**

22     2.    Individually named Tenant Plaintiffs are residents of the City of Oakland,

23 County of Alameda, California and were injured in the City of Oakland, County of Alameda,

24

1 California.   The individually named Tenant Plaintiffs are at all times pertinent to this

2 complaint, tenants residing at the property owned, controlled or operated by the Defendants,

3 located at the California Hotel at 3501 San Pablo Avenue, Oakland, California.

4      3.     On or about February 1, 2001, Plaintiff Leroy Scoggins entered into a written

5 month-to-month rental agreement with Defendants Oakland Community Housing, Inc., Cahon

6 Associates, Charles Fowlkes and Greg Hyson (hereafter "Owners") and Does I and II as

7 landlord, rented to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #101 in

8 Oakland, California, for rent of Four Hundred Eighty Dollars and No/100 ($480.00) per month.

9 Plaintiff Scoggins paid rent and performed all other obligations imposed on him by the

10 aforementioned written agreement at all times including during the period February 1, 2001 to

11 the present. Plaintiff made complaints of the defects in unit #101 to the owners and managers;

12 the repairs were not carried out.   The managers of the premises were John Steward Company,

13 Laura Sanborn (hereafter "Steward Company") and Does III to X of San Francisco, California.

14 See Exhibit A, Lease. This lease is the same as all other leases of plaintiffs.

15      4.     On or about September, 1997, Plaintiff Jackie Cummings entered in a written

16 month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

17 to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #102 in Oakland,

18 California, for rent of Five Hundred and Thirty-Five Dollars and No/100 ($535.00) per month.

19 Plaintiff Cummings paid rent and performed all other obligations imposed on her by the

20 aforementioned written agreement at all times including during the period from September,

21 1997 to the present. Plaintiff made complaints of the defects in unit #102 to the owners and

22 managers; the repairs were not carried out. The managers of the premises were the Steward

23 Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

24

1       5.      On or about February, 2007, Plaintiffs Rodney Stenson and Patricia Weatherby

2  entered in a written month-to-month rental agreement with Defendant Owners and Does I and

3  II as landlord, rented to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue

4  #103 in Oakland, California, for equivalent rent of Six Hundred Dollars and No/100 ($600.00)

5  per month. Plaintiffs Stenson and Weatherby paid rent and performed all other obligations

6  imposed on them by the aforementioned written agreement at all times including during the

7  period from February, 2007 to the present. Plaintiffs made complaints of the defects in unit

8  #203 to the owners and managers; the repairs were not carried out. The managers of the

9  premises were the Steward Company and Does III to X of San Francisco, California.

10      6.      On or about June 1, 2003, Plaintiff Edward Dickens entered in a written month-

11  to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to

12  Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #211 in Oakland,

13  California, for rent of Five Hundred and Seven Dollars and No/100 ($407.00) per month.

14  Plaintiff Dickens paid rent and performed all other obligations imposed on him by the

15  aforementioned written agreement at all times including during the period from June 1, 2003 to

16  the present. Plaintiff made complaints of the defects in unit #211 to the owners and managers;

17  the repairs were not carried out. The managers of the premises were the Steward Company and

18  Does III to X of San Francisco, California. See Exhibit A, Lease.

19      7.      On or about February 1, 2004, Plaintiff Edward Dixon entered in a written

20  month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

21  to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #214 in Oakland,

22  California, for rent of Four Hundred Ninety-Eight Dollars and No/100 ($498.00) per month.

23  Plaintiff Dixon paid rent and performed all other obligations imposed on him by the

24

1  aforementioned written agreement at all times including during the period from February 1,

2  2004 to the present. Plaintiff made complaints of the defects in unit #214 to the owners and

3  managers; the repairs were not carried out. The managers of the premises were the Steward

4  Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

5      8.      On or about February 1, 2000, Plaintiff Jeffrey Robinson entered in a written

6  month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

7  to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #223 in Oakland,

8  California, for rent of Five Hundred Dollars and No/100 ($500.00) per month.   Plaintiff

9  Robinson paid rent and performed all other obligations imposed on him by the aforementioned

10  written agreement at all times including during the period from February 1, 2000 to the present.

11  Plaintiff made complaints of the defects in unit #223 to the owners and managers; the repairs

12  were not carried out. The managers of the premises were the Steward Company and Does III to

13  X of San Francisco, California. See Exhibit A, Lease.

14      9.      On or about March 1, 1993, Plaintiff Lillie Mae Singleton entered in a written

15  month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

16  to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #225 in Oakland,

17  California, for rent of Four Hundred Eighty Dollars and No/100 ($480.00) per month. Plaintiff

18  Singleton paid rent and performed all other obligations imposed on her by the aforementioned

19  written agreement at all times including during the period from March 1, 1993 to the present.

20  Plaintiff made complaints of the defects in unit #225 to the owners and managers; the repairs

21  were not carried out. The managers of the premises were the Steward Company and Does III to

22  X of San Francisco, California. See Exhibit A, Lease.

23

24

1    10.    On or about 1995, Plaintiff Arthur Lee Bunton entered in a written month-to-

2  month rental agreement with Defendant Owners and Does I and II as landlord, rented to

3  Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #235 in Oakland,

4  California, for rent of Four Hundred Ninety-Eight Dollars and No/100 ($498.00) per month.

5  Plaintiff Bunton paid rent and performed all other obligations imposed on him by the

6  aforementioned written agreement at all times including during the period from 1995 to the

7  present. Plaintiff made complaints of the defects in unit #235 to the owners and managers; the

8  repairs were not carried out. The managers of the premises were the Steward Company and

9  Does III to X of San Francisco, California. See Exhibit A, Lease.

10    11.    On or about February, 1984, Plaintiff Leroy Williams entered in a written

11  month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

12  to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #236 in Oakland,

13  California, for rent of Two Hundred Seventy-Nine Dollars and No/100 ($279.00) per month.

14  Plaintiff Williams paid rent and performed all other obligations imposed on him by the

15  aforementioned written agreement at all times including during the period from February, 1984

16  to the present. Plaintiff made complaints of the defects in unit #236 to the owners and

17  managers; the repairs were not carried out. The managers of the premises were the Steward

18  Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

19    12.    On or about January, 1997, Plaintiff John Hines entered in a written month-to-

20  month rental agreement with Defendant Owners and Does I and II as landlord, rented to

21  Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #217 in Oakland,

22  California, for rent of Four Hundred Fifty-Four Dollars and No/100 ($454.00) per month.

23  Plaintiff Cummings paid rent and performed all other obligations imposed on him by the

24

6

1   aforementioned written agreement at all times including during the period from January, 1997

2   to the present.  Plaintiff made complaints of the defects in unit #217 to the owners and

3   managers; the repairs were not carried out. The managers of the premises were the Steward

4   Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

5           13.     On or about August 1, 2005, Plaintiff Robert Bell entered in a written month-to-

6   month rental agreement with Defendant Owners and Does I and II as landlord, rented to

7   Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #237 in Oakland,

8   California, for rent of Two Hundred Twenty-One Dollars and No/100 ($221.00) per month.

9   Plaintiff Bell paid rent and performed all other obligations imposed on him by the

10  aforementioned written agreement at all times including during the period from August 1, 2005

11  to the present.  Plaintiff made complaints of the defects in unit #237 to the owners and

12  managers; the repairs were not carried out. The managers of the premises were the Steward

13  Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

14          14.     On or about July, 2006, Plaintiff Edward Griffin entered in a written month-to-

15  month rental agreement with Defendant Owners and Does I and II as landlord, rented to

16  Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #302 in Oakland,

17  California, for rent of Four Hundred Eighty Dollars and No/100 ($480.00) per month. Plaintiff

18  Griffin paid rent and performed all other obligations imposed on him by the aforementioned

19  written agreement at all times including during the period from July, 2006 to the present.

20  Plaintiff made complaints of the defects in unit #302 to the owners and managers; the repairs

21  were not carried out. The managers of the premises were the Steward Company and Does III to

22  X of San Francisco, California.  See Exhibit A, Lease.

23

24

7

1        15.     On or about February, 1991, Plaintiff Billy Johnson entered in a written month-

2  to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to

3  Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #307 in Oakland,

4  California, for rent of Four Hundred Ninety-Eight Dollars and No/100 ($498.00) per month.

5  Plaintiff Johnson paid rent and performed all other obligations imposed on him by the

6  aforementioned written agreement at all times including during the period from February, 1991

7  to the present.  Plaintiff made complaints of the defects in unit #307 to the owners and

8  managers; the repairs were not carried out. The managers of the premises were the Steward

9  Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

10       16.     On or about August, 1993, Plaintiff Mickey Martin entered in a written month-

11  to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to

12  Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #311 in Oakland,

13  California, for rent of Four Hundred Twenty-Two Dollars and No/100 ($422.00) per month.

14  Plaintiff Martin paid rent and performed all other obligations imposed on him by the

15  aforementioned written agreement at all times including during the period from August, 1993

16  to the present.  Plaintiff made complaints of the defects in unit #311 to the owners and

17  managers; the repairs were not carried out. The managers of the premises were the Steward

18  Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

19       17.     On or about September, 2004, Plaintiff Michael Nelson entered in a written

20  month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

21  to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #312 in Oakland,

22  California, for rent of Four Hundred Ninety Dollars and No/100 ($490.00) per month. Plaintiff

23  Nelson paid rent and performed all other obligations imposed on him by the aforementioned

24

1  written agreement at all times including during the period from September, 2004 to the present.

2  Plaintiff made complaints of the defects in unit #312 to the owners and managers; the repairs

3  were not carried out. The managers of the premises were the Steward Company and Does III to

4  X of San Francisco, California. See Exhibit A, Lease.

5      18.    On or about September, 2004, Plaintiff Teresa Johnson entered in a written

6  month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

7  to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #318 in Oakland,

8  California, for rent of Four Hundred Ninety-Eight Dollars and No/100 ($498.00) per month.

9  Plaintiff Johnson paid rent and performed all other obligations imposed on her by the

10  aforementioned written agreement at all times including during the period from September,

11  2004 to the present.  Plaintiff made complaints of the defects in unit #318 to the owners and

12  managers; the repairs were not carried out. The managers of the premises were the Steward

13  Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

14      19.    On or about September, 2001, Plaintiff Stanley Le Rue Huff entered in a written

15  month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

16  to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #320 in Oakland,

17  California, for rent of Four Hundred Twenty Dollars and No/100 ($420.00) per month.

18  Plaintiff Griffin paid rent and performed all other obligations imposed on him by the

19  aforementioned written agreement at all times including during the period from September,

20  2001 to the present.  Plaintiff made complaints of the defects in unit #320 to the owners and

21  managers; the repairs were not carried out. The managers of the premises were the Steward

22  Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

23

24

1    20.    On or about April, 2003, Plaintiff Frederick Howard entered in a written month-

2    to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to

3    Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #322 in Oakland,

4    California, for rent of Four Hundred Ninety-Eight Dollars and No/100 ($498.00) per month.

5    Plaintiff Howard paid rent and performed all other obligations imposed on him by the

6    aforementioned written agreement at all times including during the period from April, 2003 to

7    the present. Plaintiff made complaints of the defects in unit #322 to the owners and managers;

8    the repairs were not carried out. The managers of the premises were the Steward Company and

9    Does III to X of San Francisco, California. See Exhibit A, Lease.

10    21.    On or about February, 1993, Plaintiff Lee V. Jenkins entered in a written

11    month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

12    to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #325 in Oakland,

13    California, for rent of Four Hundred Ninety-Eight Dollars and No/100 ($498.00) per month.

14    Plaintiff Jenkins paid rent and performed all other obligations imposed on him by the

15    aforementioned written agreement at all times including during the period from February, 1993

16    to the present. Plaintiff made complaints of the defects in unit #325 to the owners and

17    managers; the repairs were not carried out. The managers of the premises were the Steward

18    Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

19    22.    On or about January, 2007, Plaintiff Clarence Woodward entered in a written

20    month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

21    to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #327 in Oakland,

22    California, for rent of Four Hundred Twenty-Two Dollars and No/100 ($422.00) per month.

23    Plaintiff Woodward paid rent and performed all other obligations imposed on him by the

24

1   aforementioned written agreement at all times including during the period from January, 2007

2   to the present. Plaintiff made complaints of the defects in unit #327 to the owners and

3   managers; the repairs were not carried out. The managers of the premises were the Steward

4   Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

5       23.     On or about February, 2003, Plaintiff Bertha Walker entered in a written month-

6   to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to

7   Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #328 in Oakland,

8   California, for rent of Four Hundred Ninety-Seven Dollars and No/100 ($497.00) per month.

9   Plaintiff Walker paid rent and performed all other obligations imposed on her by the

10  aforementioned written agreement at all times including during the period from February, 2003

11  to the present. Plaintiff made complaints of the defects in unit #328 to the owners and

12  managers; the repairs were not carried out. The managers of the premises were the Steward

13  Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

14      24.     On or about March, 2003, Plaintiff Herman Golden, Jr. entered in a written

15  month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

16  to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #329 in Oakland,

17  California, for rent of Four Hundred Twenty-Two Dollars and No/100 ($422.00) per month.

18  Plaintiff Golden paid rent and performed all other obligations imposed on him by the

19  aforementioned written agreement at all times including during the period from March, 2003 to

20  the present. Plaintiff made complaints of the defects in unit #329 to the owners and managers;

21  the repairs were not carried out. The managers of the premises were the Steward Company and

22  Does III to X of San Francisco, California. See Exhibit A, Lease.

23

24

11

1    25.    On or about August, 1996, Plaintiff Ronald Peoples entered in a written month-

2   to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to

3   Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #336 in Oakland,

4   California, for rent of Six Hundred Fifty Dollars and No/100 ($650.00) per month.  Plaintiff

5   Peoples paid rent and performed all other obligations imposed on him by the aforementioned

6   written agreement at all times including during the period from August, 1996 to the present.

7   Plaintiff made complaints of the defects in unit #336 to the owners and managers; the repairs

8   were not carried out. The managers of the premises were the Steward Company and Does III to

9   X of San Francisco, California.  See Exhibit A, Lease.

10    26.    On or about January, 1996, Plaintiff George Clinton entered in a written month-

11   to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to

12   Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #401 in Oakland,

13   California, for rent of Seven Hundred Dollars and No/100 ($700.00) per month.  Plaintiff

14   Clinton paid rent and performed all other obligations imposed on him by the aforementioned

15   written agreement at all times including during the period from January, 1996 to the present.

16   Plaintiff made complaints of the defects in unit #401 to the owners and managers; the repairs

17   were not carried out. The managers of the premises were the Steward Company and Does III to

18   X of San Francisco, California.  See Exhibit A, Lease.

19    27.    On or about August 3, 2006, Plaintiff Otis Blacksheer entered in a written

20   month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

21   to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #404 in Oakland,

22   California, for rent of Four Hundred Seven Dollars and No/100 ($407.00) per month.  Plaintiff

23   Blacksheer paid rent and performed all other obligations imposed on him by the

24

1 | aforementioned written agreement at all times including during the period from August 3, 2006
2 | to the present. Plaintiff made complaints of the defects in unit #404 to the owners and
3 | managers; the repairs were not carried out. The managers of the premises were the Steward
4 | Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

5 | 28. On or about June, 2003, Plaintiff Mitchell Stephens entered in a written month-
6 | to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to
7 | Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #411 in Oakland,
8 | California, for rent of Four Hundred Twenty-Two Dollars and No/100 ($422.00) per month.
9 | Plaintiff Stevens paid rent and performed all other obligations imposed on him by the
10 | aforementioned written agreement at all times including during the period from June, 2003 to
11 | the present. Plaintiff made complaints of the defects in unit #411 to the owners and managers;
12 | the repairs were not carried out. The managers of the premises were the Steward Company and
13 | Does III to X of San Francisco, California. See Exhibit A, Lease.

14 | 29. On or about July, 2000, Plaintiff Andrew Aramburo entered in a written month-
15 | to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to
16 | Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #417 in Oakland,
17 | California, for rent of Five Hundred Twenty-Two Dollars and No/100 ($500.00) per month.
18 | Plaintiff Aramburo paid rent and performed all other obligations imposed on him by the
19 | aforementioned written agreement at all times including during the period from July, 2000 to
20 | the present. Plaintiff made complaints of the defects in unit #417 to the owners and managers;
21 | the repairs were not carried out. The managers of the premises were the Steward Company and
22 | Does III to X of San Francisco, California. See Exhibit A, Lease.

23

24

1    30.    On or about October, 2006, Plaintiff George Reynolds entered in a written
2    month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented
3    to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #419 in Oakland,
4    California, for rent of Four Hundred Eighty Dollars and No/100 ($480.00) per month. Plaintiff
5    Reynolds paid rent and performed all other obligations imposed on him by the aforementioned
6    written agreement at all times including during the period from October, 2006 to the present.
7    Plaintiff made complaints of the defects in unit #419 to the owners and managers; the repairs
8    were not carried out. The managers of the premises were the Steward Company and Does III to
9    X of San Francisco, California. See Exhibit A, Lease.

10    31.    On or about February, 2006, Plaintiff Katherine Marsh entered in a written
11    month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented
12    to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #422 in Oakland,
13    California, for rent of Four Hundred Eighty Dollars and No/100 ($480.00) per month. Plaintiff
14    Marsh paid rent and performed all other obligations imposed on him by the aforementioned
15    written agreement at all times including during the period from February, 2006 to the present.
16    Plaintiff made complaints of the defects in unit #422 to the owners and managers; the repairs
17    were not carried out. The managers of the premises were the Steward Company and Does III to
18    X of San Francisco, California. See Exhibit A, Lease.

19    32.    On or about October 1, 2006, Plaintiff Laura Valenzuela entered in a written
20    month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented
21    to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #435 in Oakland,
22    California, for rent of Four Hundred Eighty Dollars and No/100 ($480.00) per month. Plaintiff
23    Valenzuela paid rent and performed all other obligations imposed on her by the
24

14

1   aforementioned written agreement at all times including during the period from October 1,

2   2006 to the present. Plaintiff made complaints of the defects in unit #435 to the owners and

3   managers; the repairs were not carried out. The managers of the premises were the Steward

4   Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

5       33.    On or about January, 2003, Plaintiff Edgar Hanna entered in a written month-to-

6   month rental agreement with Defendant Owners and Does I and II as landlord, rented to

7   Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #427 in Oakland,

8   California, for rent of Four Hundred Twenty-Five Dollars and No/100 ($425.00) per month.

9   Plaintiff Hanna paid rent and performed all other obligations imposed on him by the

10   aforementioned written agreement at all times including during the period from January, 2003

11   to the present. Plaintiff made complaints of the defects in unit #427 to the owners and

12   managers; the repairs were not carried out. The managers of the premises were the Steward

13   Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

14       34.    On or about March, 1997, Plaintiff Noland Goodrum entered in a written

15   month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

16   to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #429 in Oakland,

17   California, for rent of Four Hundred Twenty Dollars and No/100 ($420.00) per month.

18   Plaintiff Goodrum paid rent and performed all other obligations imposed on him by the

19   aforementioned written agreement at all times including during the period from March, 1997 to

20   the present. Plaintiff made complaints of the defects in unit #429 to the owners and managers;

21   the repairs were not carried out. The managers of the premises were the Steward Company and

22   Does III to X of San Francisco, California. See Exhibit A, Lease.

23

24

15

35. On or about May 1, 2004, Plaintiff Ted Dixon entered in a written month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #433 in Oakland, California, for rent of Four Hundred Twenty Dollars and No/100 ($420.00) per month. Plaintiff Dixon paid rent and performed all other obligations imposed on him by the aforementioned written agreement at all times including during the period from May 1, 2004 to the present. Plaintiff made complaints of the defects in unit #433 to the owners and managers; the repairs were not carried out. The managers of the premises were the Steward Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

36. On or about November, 2004, Plaintiffs Tami Forrest and Elmore Shivaro entered in a written month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to Plaintiffs, as tenant, an apartment located at 3501 San Pablo Avenue #437 in Oakland, California, for rent of Six Hundred Seventy Dollars and No/100 ($670.00) per month. Plaintiffs Forrest and Shivaro paid rent and performed all other obligations imposed on him by the aforementioned written agreement at all times including during the period from November, 2004 to the present. Plaintiffs made complaints of the defects in unit #437 to the owners and managers; the repairs were not carried out. The managers of the premises were the Steward Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

37. On or about December, 2002, Plaintiff Jesse Powell entered in a written month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #438 in Oakland, California, for rent of Six Hundred Forty-Five Dollars and No/100 ($645.00) per month.

16

1 | Plaintiff Powell paid rent and performed all other obligations imposed on him by the
2 | aforementioned written agreement at all times including during the period from December,
3 | 2002 to the present. Plaintiff made complaints of the defects in unit #438 to the owners and
4 | managers; the repairs were not carried out. The managers of the premises were the Steward
5 | Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

6 | 38. On or about January 5, 2006, Plaintiff Duane Anderson entered in a written
7 | month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented
8 | to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #501 in Oakland,
9 | California, for rent of Six Hundred Forty-Six Dollars and No/100 ($646.00) per month.
10 | Plaintiff Stevens paid rent and performed all other obligations imposed on him by the
11 | aforementioned written agreement at all times including during the period from January 5,
12 | 2006 to the present. Plaintiff made complaints of the defects in unit #501 to the owners and
13 | managers; the repairs were not carried out. The managers of the premises were the Steward
14 | Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

15 | 39. On or about January, 1999, Plaintiff Bernadette Thompson entered in a written
16 | month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented
17 | to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #502 in Oakland, .
18 | California, for rent of Four Hundred Ninety-Eight Dollars and No/100 ($498.00) per month.
19 | Plaintiff Thompson paid rent and performed all other obligations imposed on her by the
20 | aforementioned written agreement at all times including during the period from January, 1999
21 | to the present. Plaintiff made complaints of the defects in unit #501 to the owners and
22 | managers; the repairs were not carried out. The managers of the premises were the Steward
23 | Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

24 |

17

1    40.    On or about December, 2006, Plaintiff Mareio Davis entered in a written

2  month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

3  to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #504 in Oakland,

4  California, for rent of Four Hundred Seven Dollars and No/100 ($407.00) per month. Plaintiff

5  Davis paid rent and performed all other obligations imposed on him by the aforementioned

6  written agreement at all times including during the period from December, 2006 to the present.

7  Plaintiff made complaints of the defects in unit #504 to the owners and managers; the repairs

8  were not carried out. The managers of the premises were the Steward Company and Does III to

9  X of San Francisco, California. See Exhibit A, Lease.

10    41.    On or about May, 2004, Plaintiff George Stringer entered in a written month-to-

11  month rental agreement with Defendant Owners and Does I and II as landlord, rented to

12  Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #510 in Oakland,

13  California, for rent of Four Hundred Eighty Dollars and No/100 ($480.00) per month. Plaintiff

14  Stringer paid rent and performed all other obligations imposed on him by the aforementioned

15  written agreement at all times including during the period from May, 2004 to the present.

16  Plaintiff made complaints of the defects in unit #510 to the owners and managers; the repairs

17  were not carried out. The managers of the premises were the Steward Company and Does III to

18  X of San Francisco, California. See Exhibit A, Lease.

19    42.    On or about February, 2005, Plaintiff David McQuilling entered in a written

20  month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

21  to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #515 in Oakland,

22  California, for rent of Four Hundred Twenty-Two Dollars and No/100 ($422.00) per month.

23  Plaintiff McQuilling paid rent and performed all other obligations imposed on him by the

24

18

1  aforementioned written agreement at all times including during the period from February, 2005

2  to the present.  Plaintiff made complaints of the defects in unit #515 to the owners and

3  managers; the repairs were not carried out. The managers of the premises were the Steward

4  Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

5      43.    On or about July 1, 2005, Plaintiff Phylis McMillon entered in a written month-

6  to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to

7  Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #516 in Oakland,

8  California, for rent of Four Hundred Ninety-Eight Dollars and No/100 ($498.00) per month.

9  Plaintiff McMillon paid rent and performed all other obligations imposed on her by the

10  aforementioned written agreement at all times including during the period from July 1, 2005 to

11  the present. Plaintiff made complaints of the defects in unit #516 to the owners and managers;

12  the repairs were not carried out. The managers of the premises were the Steward Company and

13  Does III to X of San Francisco, California. See Exhibit A, Lease.

14      44.    On or about September, 2000, Plaintiff David McQuilling entered in a written

15  month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

16  to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #517 in Oakland,

17  California, for rent of Five Hundred Ninety-Two Dollars and No/100 ($592.00) per month.

18  Plaintiff Miller paid rent and performed all other obligations imposed on him by the

19  aforementioned written agreement at all times including during the period from September,

20  2000 to the present. Plaintiff made complaints of the defects in unit #517 to the owners and

21  managers; the repairs were not carried out. The managers of the premises were the Steward

22  Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

23

24

19

Complaint for Injunction and Damages

1    45.    On or about April, 2006, Plaintiff Mitchell Stewart entered in a written month-
2    to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to
3    Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #518 in Oakland,
4    California, for rent of Four Hundred Eighty Dollars and No/100 ($480.00) per month. Plaintiff
5    Stewart paid rent and performed all other obligations imposed on him by the aforementioned
6    written agreement at all times including during the period from April, 2006 to the present.
7    Plaintiff made complaints of the defects in unit #518 to the owners and managers; the repairs
8    were not carried out. The managers of the premises were the Steward Company and Does III to
9    X of San Francisco, California. See Exhibit A, Lease.

10    46.    On or about April, 2006, Plaintiff Gabriel Joseph Johnson entered in a written
11    month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented
12    to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #521 in Oakland,
13    California, for rent of Four Hundred Eighty Dollars and No/100 ($480.00) per month. Plaintiff
14    Johnson paid rent and performed all other obligations imposed on her by the aforementioned
15    written agreement at all times including during the period from April, 2006 to the present.
16    Plaintiff made complaints of the defects in unit #521 to the owners and managers; the repairs
17    were not carried out. The managers of the premises were the Steward Company and Does III to
18    X of San Francisco, California. See Exhibit A, Lease.

19    47.    On or about October, 2002, Eugene Swann entered in a written month-to-month
20    rental agreement with Defendant Owners and Does I and II as landlord, rented to Plaintiff, as
21    tenant, an apartment located at 3501 San Pablo Avenue #523 in Oakland, California, for rent of
22    Six Hundred Seventy-Three Dollars and No/100 ($673.00) per month. Plaintiff Swann paid rent
23    and performed all other obligations imposed on him by the aforementioned written agreement

24

20

1  at all times including during the period from October, 2002 to the present. Plaintiff made
2  complaints of the defects in unit #523 to the owners and managers; the repairs were not carried
3  out. The managers of the premises were the Steward Company and Does III to X of San
4  Francisco, California. See Exhibit A, Lease.

5      48.    On or about May, 2003, Plaintiff Tom Brown entered in a written month-to-
6  month rental agreement with Defendant Owners and Does I and II as landlord, rented to
7  Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #533 in Oakland,
8  California, for rent of Four Hundred Twenty-Two Dollars and No/100 ($422.00) per month.
9  Plaintiff Brown paid rent and performed all other obligations imposed on him by the
10. aforementioned written agreement at all times including during the period from May, 2003 to
11 the present. Plaintiff made complaints of the defects in unit #533 to the owners and managers;
12 the repairs were not carried out. The managers of the premises were the Steward Company and
13 Does III to X of San Francisco, California. See Exhibit A, Lease.

14     49.    On or about January 1, 2007, Plaintiff Jeffrey Moniz entered in a written month-
15 to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to
16 Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #535 in Oakland,
17 California, for rent of Four Hundred Eighty Dollars and No/100 ($480.00) per month. Plaintiff
18 Moniz paid rent and performed all other obligations imposed on him by the aforementioned
19 written agreement at all times including during the period from January 1, 2007 to the present.
20 Plaintiff made complaints of the defects in unit #535 to the owners and managers; the repairs
21 were not carried out. The managers of the premises were the Steward Company and Does III to
22 X of San Francisco, California. See Exhibit A, Lease.

23

24

21

1     50.    On or about December, 2004, Plaintiff James Cunningham entered in a written

2   month-to-month rental agreement with Defendant Owners and Does I and II as landlord, rented

3   to Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #537 in Oakland,

4   California, for rent of Six Hundred Forty-Five Dollars and No/100 ($645.00) per month.

5   Plaintiff Cunningham paid rent and performed all other obligations imposed on him by the

6   aforementioned written agreement at all times including during the period from December,

7   2004 to the present.  Plaintiff made complaints of the defects in unit #537 to the owners and

8   managers; the repairs were not carried out. The managers of the premises were the Steward

9   Company and Does III to X of San Francisco, California.  See Exhibit A, Lease.

10     51.    On or about October, 2006, Plaintiff Robin Menetee entered in a written month-

11   to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to

12   Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #537 in Oakland,

13   California, for rent of Six Hundred Forty-Five Dollars and No/100 ($645.00) per month.

14   Plaintiff Menetee paid rent and performed all other obligations imposed on her by the

15   aforementioned written agreement at all times including during the period from October, 2006

16   to the present.  Plaintiff made complaints of the defects in unit #537 to the owners and

17   managers; the repairs were not carried out. The managers of the premises were the Steward

18   Company and Does III to X of San Francisco, California.  See Exhibit A, Lease.

19     52.    On or about May 1, 2001, Plaintiff Yvonne Brown entered in a written month-

20   to-month rental agreement with Defendant Owners and Does I and II as landlord, rented to

21   Plaintiff, as tenant, an apartment located at 3501 San Pablo Avenue #602/501 in Oakland,

22   California, for rent of Four Hundred Ninety-Eight Dollars and No/100 ($498.00) per month.

23   Plaintiff Brown paid rent and performed all other obligations imposed on her by the

24

1    aforementioned written agreement at all times including during the period from May 1, 2001 to
2    the present. Plaintiff made complaints of the defects in unit #602/501 to the owners and
3    managers; the repairs were not carried out. The managers of the premises were the Steward
4    Company and Does III to X of San Francisco, California. See Exhibit A, Lease.

5        53.    Plaintiffs are informed and believe, and thereupon allege, that at all times
6    relevant hereto Defendant Owners and Does I and II have their principal place of business in
7    the City of Oakland. Defendant Owners and Does I and II are the owners of the apartment
8    building at 3501 San Pablo Avenue, Oakland, California. All decisions concerning the
9    condition of the apartments are under their control and power from 2005 to 2008. Defendants
10   Steward Company and Does III through X were the managers of the apartments at 3501 San
11   Pablo Avenue, Oakland, California at all times during the period from 2007 to 2008. All
12   conditions at the premises in questions are and have been under Defendants' control and power
13   at all times including during the period January 1, 2007 to the present.

14       54.    At all times material herein, Defendants have conspired to allow the apartments
15   at 3501 San Pablo Avenue, Oakland, California to deteriorate to such an extent that they are
16   and remain uninhabitable, for the purpose of extracting rental monies while avoiding
17   enforcement of the health, safety, and housing laws, and have conspired to allow the
18   maintenance of a public nuisance.

19       55.    The true identities and capacities of Defendants DOES I through X, inclusive,
20   are unknown to Plaintiffs at this time, who will file an amendment to this Complaint when the
21   same are ascertained. Plaintiffs are informed and believe, and there upon allege, that each
22   DOE Defendant is responsible for the acts and conditions complained of herein.

23

24

23

1    56.    Plaintiffs are informed and believe, and thereupon allege, that at all times
2  pertinent to this complaint, that all the acts and failures to act alleged herein were duly per
3  formed by and attributable to all Defendants, each acting as agent, under employee or under the
4  direction and control of the others.  Said acts and failures to act were within the scope of said
5  agency and/or employment, and each Defendant ratified the acts and omissions by the other
6  Defendants.  Whenever and wherever reference is made in this Complaint to any acts by
7  Defendants, such allegations and references shall also be deemed to mean the acts of each
8  Defendant acting individually, jointly or severally.

9    57.    Plaintiffs' claims for the following units commence on or after May 1, 2008:
10  101, 212, 236, 307, 320, 404, 429 and 437, 237, 302, 318, 327,328,329, 401, 411,433, 518,533,
11    58.    Plaintiffs' claims for the following units commence on October 1, 2006:  211,
12  214, 217, 302, 311, 322, 336, 417, 438, 502, 515, 517 and 602.

13    59.    Plaintiffs believe that all Defendants are responsible for the dangerous
14  conditions now existing.

15                              **REAL PROPERTY**

16    60.    The building and apartments at the California Hotel, 3501 San Pablo Avenue,
17  Oakland, California are under the control of Defendant Owners and Does I and II.  It is a 150-
18  unit apartment complex.  The building has been in substandard and uninhabitable condition
19  since before January 1, 2005 and has been the subject of numerous complaints to the Alameda
20  County Health Department, the Oakland Code Compliance Office and the Oakland Fire
21  Department.

22    61.    The building at 3501 San Pablo Avenue, Oakland, California has been the
23  subject of complaints for corrections arising from numerous violations of Health and Safety
24

24

1   Codes from 2005 to the present. This complex is under the control of all Defendants at all

2   times including during the period January 1, 2005 to the present.

3                                    **VENUE**

4          62.    Pursuant to Code of Civil Procedure Sections 395 and 395.5, venue is proper in

5   the Alameda County Judicial District, Oakland because that is the District in which Plaintiffs'

6   injuries occurred, where some or all of the Defendants reside, and where Defendant Owners'

7   principal place of business is located.

8                   **COMMON ALLEGATIONS OF FACT AS TO**
                   **THE HISTORY OF THE CALIFORNIA HOTEL**

9

10         63.    On April 1, 1989, Defendants Cahon Associates and Greg Hyson (hereafter

11  "Cahon, Hyson") signed a Regulatory Agreement (hereafter "Agreement") with Ronnie Chue

12  of The California Tax Credit Allocation Committee (CTCAC) pursuant to Sections 17058 and

13  23610.5 of the Revenue and Taxation Code of the State of California (hereafter "R&TC") that

14  Defendants Cahon, Hyson would operate low-income housing at the California Hotel, 3501

15  San Pablo Avenue, Oakland, California for the compliance period of thirty (30) years. See

16  Exhibit B, Regulatory Agreement, Section Two, incorporated by reference as though fully set

    forth.

17         64.    The Project was a 150 unit multi-family dwelling to be operated by Defendants

18  Cahon, Hyson beginning on December 31, 1989 until December 31, 2019. Defendants Cahon,

19  Hyson were given a tax credit in excess of Seven Million Dollars ($7,000,000) pursuant to the

20  Agreement.

21         65.    The Agreement provides that all units be low-income units occupied by low-

22  income tenants and that the rent be restricted to low income with respect to any tenant or

23  income level that does not exceed sixty percent (60%) of the Area Median Gross Income under

24

                                          25

1  Section 142(d)(2)(3) of the Internal Revenue Code. See Exhibit B, Regulatory Agreement,
2  Section One.

3      66.    Under the Agreement, the Owners are required to maintain the project as a
4  qualified low-income Housing Project for the entire compliance period of thirty (30) years,
5  beginning not later than the close of the first year of the credit period. See Exhibit B,
6  Regulatory Agreement, Section Four.

7      67.    Under the Agreement, the Owners are required to hold all units in the Project
8  continually open for rental purposes during the compliance period and take affirmative steps to
9  seek qualified tenants. See Exhibit B, Regulatory Agreement, Section Six.

10     68.    Under the Agreement, if after the first eighteen (18) years of the compliance
11 period, the project is not economically feasible, the Owners shall be entitled to reduce the
12 minimum low-income units, one or more as is necessary for the project to become
13 economically feasible. See Exhibit B, Regulatory Agreement, Section Eight.

14     69.    "Economically feasible" means the project revenues exceed or equal the
15 reasonable expense necessary to operate and maintain the project in habitable condition. See
16 Exhibit B, Regulatory Agreement, Section One.

17     70.    If the Owners default on their obligations under the Agreement and such default
18 is not corrected within a reasonable time, the remedies of the CTCAC and the tenants include,
19 but are not limited to, the following:

20          a.   collecting all rents with respect to the Project;

21          b.   taking possession of the Project and operating the Project in
22               accordance with this Agreement until the Owner is in a position to
23               operate the Project in accordance with this Agreement;

24

1            c.    applying to any court for specific performance;

2            d.    securing the appointment of a receiver to operate the Project; or

3            e.    any other relief as may be appropriate.

4            See Exhibit B, Regulatory Agreement, Section Ten

5        70.    Sections 17058(h)(9) and 23610 of the R&TC provide for the same remedies

6    and enforcement against the Owners as the Agreement.

7        71.    On or about June 1, 2007, there were approximately 150 tenants occupying the

8    premises at the California Hotel and paying an average rent of $500 per unit. This is a total

9    income of $75,000 per month. Based on information and belief, the operating expenses for the

10   California Hotel were under $75,000 per month, including expenses for the managers, security,

11   desk clerks, janitors, maintenance, garbage disposal, electricity and water.

12       72.    On or about June 1, 1995, Oakland Community Housing, Inc. became the

13   operating company for Cahon Associates. Oakland Community Housing, Inc. operated the

14   California Hotel and carried out the management functions with the assistance of Oakland

15   Community Housing Management.

16       73.    In 2007, the John Steward Company took over the management duties for the

17   California Hotel.

18       74.    After June 1, 2007, Defendant Owners, California Community Housing

19   Management and the Steward Company rented available apartments to low-income tenants.

20       75.    On or about the period June 1, 2007 to June 1, 2008, the number of tenants at

21   the California Hotel decreased from 150 to the present 75 tenants. All Plaintiffs are low-

22   income tenants under R&TC Section 17058.

23

24

1    76.    On or about June 20, 2008, Defendant Owners and the Steward Company
2    notified Plaintiffs and all other tenants that they would stop managing the California Hotel on
3    July 15, 2008. See Exhibit C, Letter of Steward Company incorporated by reference.

4    77.    Defendant Owners and the Steward Company have stopped making repairs at
5    the California Hotel.

6    78.    At a meeting on June 20, 2008, Defendant Oakland Community Housing, Inc.,
7    notified the tenants that Defendants would remodel the building and sell the new units.

8    79.    The effect of this action by Defendants is to abandon the building which houses
9    the California Hotel and to create a public nuisance as well as a private nuisance. Defendants
10   are in violation of the Agreement and R&TC Section 17058.

11   80.    The City of Oakland has loaned Defendants in excess of Two Million Dollars
12   ($2,000,000) to operate the California Hotel between 1995 and 2006.

13   81.    Plaintiffs are all low-income persons and will suffer irreparable harm and
14   become homeless if the California Hotel is closed, and they are forced into the street. They
15   have no income except their limited social security of less than Nine Hundred Dollars ($900)
16   per month. There is very little available housing for this large a number of homeless people in
17   the City of Oakland.

18   82.    Plaintiffs seek to have the Court order Defendants to comply with the
19   Agreement and to continue to operate the California Hotel.

20   83.    In the alternative, Plaintiffs seek the appointment of a Receiver by the Court to
21   operate the California Hotel under the Agreement and R&TC Section 17058, or to allow the
22   tenants to operate the building at the California Hotel.

23   / / / / /

24

28

## COMMON ALLEGATIONS OF FACT AS TO
## THE CONDITION OF THE BUILDINGS

84.    Defendant Owners, their agents and DOES I through X have maintained the land and apartments at 3501 San Pablo Avenue, Oakland, California in an uninhabitable condition from July 1, 2005 to the present.

85.    During all times material herein, Tenant Plaintiffs have repeatedly informed Defendants, and/or their agents, employees or successors-in-interest of the deplorable, unsafe, unhealthful and uninhabitable conditions of the apartments at 3501 San Pablo Avenue, Oakland, California and of the need for repairs.

86.    Defendant Owners and Does I and II have had ample opportunity to correct the substandard and dangerous conditions of the apartments at 3501 San Pablo Avenue, Oakland, California but despite their knowledge of the conditions and the opportunity to correct them, Defendants have willfully failed and refused, and continue willfully to fail and refuse to make the necessary repairs and unless ordered by this Court to do so, will continue willfully to fail and refuse to make repairs necessary to bring the apartments at 3501 San Pablo Avenue, Oakland, California into compliance with the Agreement and applicable building, health, safety codes, regulations, ordinances and laws. Plaintiffs further allege that Defendant Owners and Does I and II are willfully failing and refusing to keep people from using and occupying the apartments at 3501 San Pablo Avenue, Oakland. The relevant laws which Defendant Owners have and continue to violate include the habitability laws and standards contained in the California Civil Code Sections 1941, 1941.1, the California Health and Safety Code Section 17920.3 and the R&TC Section 17058. Defendant Owners and Does I through X, by flouting the law and grossly violating the building, health and safety codes, ordinances,

1    regulations and laws as well as the R&TC, have rendered, and will continue to render, the

2    building unsafe, unsanitary, unhealthy and unfit for human habitation.

3        87.    The conditions include but are not limited to the following:

4            a.    smoke detectors missing or not operating;

5            b.    large amounts of trash and debris behind the building and accumulation

6                of garbage at the bins;

7            c.    heating system defective in numerous places throughout the buildings,

8                water damage to wall, floors and ceilings;

9            d.    infestation of vermin, rodents, cockroaches, bedbugs, spiders, fleas, rats,

10                insects, and maintenance of rodent harborage;

11            e.    inadequate and defective plumbing;

12            f.    inadequate and defective electrical systems and outlets, exposed wiring;

13            g.    lack of security for tenants by the allowance of drug dealers and other

14                unauthorized persons to use common areas; and

15            h.    other substandard, dilapidated, dangerous, unhealthful and uninhabitable

16                conditions.

17        88.    At all times material herein, as a consequence of the conduct by Defendant

18    Owners as alleged herein, the building at 3501 San Pablo Avenue, Oakland, California has not

19    been habitable or tenantable, has had no reasonable rental value, and will remain uninhabitable

20    and untenantable and without rental value until Defendant Owners correct the uninhabitable

21    conditions.

22        89.    As a proximate result of the lack of adequate security as alleged herein,

23    unauthorized persons have been and, unless Defendant Owners are enjoined by this Court, will

24

1   continue to frequent the building at 3501 San Pablo Avenue, Oakland, California and the

2   common areas. Said persons have threatened tenants' security, safety, physical and emotional

3   well-being, and quiet enjoyment of the buildings; the tenants have been and will continue to be

4   subjected to, repeated harassment, intimidation and other offensive and/or criminal conduct by

5   third persons, as well as the threat and risk of such conduct, in the apartment units, the

6   common areas, apartment buildings, all as a result of Defendant Owners' inadequate and lack

7   of security measures.

8       90.    Public officers and employees who are responsible for the enforcement of

9   housing, health and safety ordinances, codes, laws and regulations on frequent occasions have

10  notified, in writing, the record owners or agents of the record owners, after complaints by

11  tenants of the building at 3501 San Pablo Avenue, Oakland, California that it is the record

12  owners' obligation to abate the nuisance and repair the substandard conditions.

13      91.    The conditions complained of herein were not caused by any act or omission by

14  any Plaintiffs.

15                          **FIRST CAUSE OF ACTION**
                         (By All Plaintiffs Against All Defendants)
16              (Violation of Regulatory Agreement and R&TC Section 17058)

17      92.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 91,

18  inclusive, as if fully set forth in this paragraph.

19      93.    Defendants Cahon, Hyson entered into an agreement with CTCAC to operate

20  the California Hotel at 3501 San Pablo Avenue, Oakland, California as low-income rental

21  housing for thirty (30) years in return for a tax credit of over Seven Million Dollars

22  ($7,000,000). Later, Defendant Cahon, Hyson adopted the Agreement. See Exhibit B,

23  Regulatory Agreement.

24

31

1          94.    The Agreement was governed by R&TC Sections 17058 and 23610.5.

2          95.    The Agreement and R&TC provide that if Defendants or its assignees default in
3    its obligation under the Agreement, and the default is not cured within a reasonable time, the
4    tenants and/or CTCAC can seek remedies in the Superior Court, including specific
5    performance, taking possession of the Project or seeking the appointment of a Receiver until
6    Defendants are capable of carrying out their obligations.

7          96.    Defendants have defaulted in their obligation under the Agreement because,
8    since June, 2007, they are not renting out units as they become vacant, and fifty percent (50%)
9    of the available units are vacant. Since Defendants do not have sufficient funds to pay
10   operating costs, they are abandoning the building on July 15, 2008, and they want all tenants
11   removed from the California Hotel so the units can be remodeled and the property sold as
12   condominiums.

13         97.    Tenant Plaintiffs are third-party beneficiaries under the Agreement and R&TC
14   Sections 17058 and 23610.5. They are seeking a Court Order 1) to require Defendants to
15   comply with the Agreement; 2) to have a Trustee appointed to operate the California Hotel; or
16   3) to allow the tenants and their agents to operate the California Hotel.

17         98.    Defendants are threatening to remove all management services for the
18   California Hotel in violation of ¹25 Cal. Code Regs No. 42    . In addition, they plan to
19   abandon the building and force Tenant Plaintiffs out of the California Hotel into the streets of
20   Oakland on July 15, 2008. Plaintiffs will suffer irreparable harm by this action because they
21   will become homeless and will suffer extreme mental and physical harm. All Plaintiffs have
22   physical or mental problems, are under SSI coverage and are unable to locate adequate
23   housing.

24

1    99.    There is no adequate remedy at law because damages cannot compensate for

2    homelessness and suffering the dangers of assault or violence due to living on the streets of

3    Oakland.

4    There is a strong likelihood that Plaintiffs will prevail on a hearing for preliminary injunction

5    because Defendants are in violation of the Agreement and R&TC Section 17058. Plaintiffs are

6    entitled to specific preference, injunction and attorney fees and costs under the Agreement and

7    R&TC Section 17058.

8                        **SECOND CAUSE OF ACTION**
                        (By All Tenant Plaintiffs Against All Defendants)
9                        (Breach of Contract and Warranty of Habitability)

10   100.    Each Tenant Plaintiff realleges and incorporates by reference paragraphs 1

11   through 91, inclusive, as if fully set forth in this paragraph.

12   101.    Each Tenant Plaintiff occupied the building at 3501 San Pablo Avenue,

13   Oakland, California pursuant to a written contract. By renting the premises to Plaintiffs,

14   Defendants implicitly warranted the premises to be habitable and that Plaintiffs could

15   peaceably and quietly have, hold and enjoy the premises for the terms of their tenancies.

16   102.    Defendants have breached the implied warranty of habitability and implied

17   covenant of quiet use and enjoyment by operating, maintaining and renting to tenants the

18   residential apartment in an untenantable condition and by failing to correct such unlawful

19   conditions so as to make the premises fit for human habitation and by failing to provide

20   adequate security as alleged herein.

21   103.    Each Tenant Plaintiff has been damaged by Defendants' conduct in amounts

22   equal to rents due and paid by each Plaintiff during the life of each Plaintiff's tenancy, or in

23   amounts to be proven at trial.

24

33

1   104.   As a direct and proximate result of Defendants' conduct, each Tenant Plaintiff
2   has suffered and will continue to suffer damage and lost income; all to his or her damage in an
3   amount to be determined at trial but which amount is within the jurisdictional requirements of
4   this Court.

5   105.   Plaintiffs are all entitled to special damages for breach of contract including rent
6   rebates and attorney fees.

7                              **THIRD CAUSE OF ACTION**
                         (By All Tenant Plaintiffs Against All Defendants)
8              (Negligent Maintenance of 3501 San Pablo Avenue, Oakland, California)

9   106.   Each Tenant Plaintiff realleges and incorporates by reference paragraphs 1
10  through 91, inclusive, as if fully set forth in this paragraph.

11  107.   At all times herein material, Defendants owed a duty of care under the common
12  law and as specified in Civil Code Section 1714 to exercise due care in the management of
13  their property to avoid foreseeable injury to others. Such due care required Defendants to
14  comply with all building, health, and safety codes and other ordinances, statutes and laws
15  regulating the maintenance and operation of residential housing or other rental units.

16  108.   Defendants have breached their common law and statutory duties of due care by
17  negligently and recklessly renting and maintaining the premises as set forth above and as
18  defined by, but not limited to, Civil Code Section 1714 et seq.; negligently and recklessly
19  violating the applicable building, health and safety codes, ordinances, statutes and laws,
20  including but not limited to those specified in paragraph 87 above; negligently failing to
21  correct such unlawful conditions so as to make the premises fit for human habitation.

22  109.   As a direct and proximate result of Defendants' conduct, each Tenant Plaintiff
23  has suffered and will continue to suffer temporarily and/or permanently mental stress,
24

                                           34

1  emotional distress, discomfort, annoyance, anxiety, physical injuries, illness, pain and

2  suffering, property damage and lost income; all to his or her damage in an amount to be

3  determined at trial but which amount is within the jurisdictional requirements of this Court.

**FOURTH CAUSE OF ACTION**
(By All Tenant Plaintiffs Against All Defendants)
(Intentional Infliction of Emotional Distress)

6  110.    Each Tenant Plaintiff realleges and incorporates by reference paragraphs 1

7  through 91, inclusive, as if fully set forth in this paragraph.

8  111.    Defendants, and/or their agents and employees, have abused their positions and

9  have acted in an outrageous manner by, *inter alia*: failing and refusing to provide adequate

10  security on the premises; failing to abate a dangerous and unhealthy nuisance; maintaining

11  each Plaintiff's living or other quarters in an unsafe, unhealthy, uninhabitable and untenantable

12  condition; refusing to repair said premises in the face of numerous complaints by Plaintiffs;

13  violating health and safety standards, codes, ordinances, regulations and statutes causing

14  damages to the Plaintiffs including emotional harm.

15  112.    In committing these acts and omissions, all Defendants knew or should have

16  known that their conduct would result in each Tenant Plaintiff's severe emotional distress, and

17  Defendants' actions and omissions were perpetrated with the intent to inflict severe emotional

18  distress upon each Tenant Plaintiff and/or with reckless disregard for the severe emotional

19  consequences of their acts and omissions, thereby entitling Plaintiffs to punitive damages

20  according to proof at trial.

21  / / / / /

22  / / / / /

23  / / / / /

24

35

1

**FIFTH CAUSE OF ACTION**
(By All Tenant Plaintiffs Against All Defendants)
(Nuisance – Negligence0

2

3       113.    Each Tenant Plaintiff realleges and incorporates by reference paragraphs 1

4     through 91, inclusive, as if fully set forth in this paragraph.

5       114.    The defective conditions in the premises alleged above constituted a nuisance

6     within the meaning of Civil Code Section 3479.

7       115.    Said nuisance affected and specially injured Plaintiffs in that they were deprived

8     of the safe, healthy and comfortable use of the aforesaid premises as their dwelling.

9       116.    Defendants knew or reasonably should have known that Plaintiffs would suffer

10    damage in the form of property destruction and loss, mental stress, physical distress, physical

11    discomfort, and embarrassment, which, in fact, they did suffer.

12      117.    Defendants were required by law to abate such nuisance, but failed to do so. As

13    a direct and proximate result of Defendants' failure, Plaintiffs suffered discomfort and

14    annoyance, all to their special and general damage according to proof.

15

**SIXTH CAUSE OF ACTION**
(By All Tenant Plaintiffs Against All Defendants)
(Violation of Statutory Duty – Intentional)

16

17      118.    Each Tenant Plaintiff realleges and incorporates by reference paragraphs 1

18    through 91, inclusive, as if fully set forth in this paragraph.

19      119.    The building at 3501 San Pablo Avenue, Oakland, California was and is at all

20    times relevant maintained and utilized in violation of Civil Code Sections 1941 and 1941.1 in

21    that: the buildings have been allowed through neglect and inaction to deteriorate to such an

22    extent that the health and safety of the tenants and public were and are substantially

23

24

36

1    endangered. As a direct and proximate result of the acts of Defendants, and each of them,

2    Plaintiffs have been generally damaged in a sum according to proof at the time of trial.

3        120.    Defendants' failure to correct the defective conditions described above was

4    knowing, intentional and willful and was, further, malicious and oppressive and in conscious

5    disregard of the Plaintiffs' rights and, therefore, Plaintiffs are entitled to exemplary and

6    punitive damages according to proof at the time of trial against all Defendants.

7                              **SEVENTH CAUSE OF ACTION**
                        (By All Tenant Plaintiffs Against All Defendants)
8                   (Breach of Implied Warranty of Habitability – Intentional Tort)

9        121.    Each Tenant Plaintiff realleges and incorporates by reference paragraphs 1

10    through 91, inclusive, as if fully set forth in this paragraph.

11        122.    Plaintiffs all had written contracts with the Defendants. The contracts provide

12    for repairs and maintenance by the implied warranty of habitability. Plaintiffs all requested

13    repairs of the defects to the Defendants. Plaintiffs did not receive the repairs to the units that

14    were requested. As a result, Plaintiffs all suffered damages and are entitled to a rent rebate,

15    damages for pest control, and damages for lost clothing, bedding, and furniture and suffered

16    general damages for pain and suffering.

17        123.    Defendants failed to correct the defective conditions described hereto in the

18    Plaintiffs' apartments.

19        124.    Plaintiffs all suffered general and special damages as a result of the defects in

20    their units.

21    / / / / /

22    / / / / /

23    / / / / /

24

37

Complaint for Injunction and Damages

1

**EIGHTH CAUSE OF ACTION**
(By All Tenant Plaintiffs Against All Defendants)
(Breach of Covenant of Good Faith and Fair Dealing)

2

3    125.    Each Tenant Plaintiff realleges and incorporates by reference paragraphs 1

4    through 91, inclusive, as if fully set forth in this paragraph.

5    126.    Plaintiffs, at the time of the execution of the parties' rental agreement, were in

6    an unequal bargaining position due to the Plaintiffs' need for acceptable and affordable

7    housing. Additionally, Plaintiffs entered into the rental agreement to secure a place of abode

8    and emotional tranquility and peace of mind in avoiding the need to move from place to place.

9    Defendants did not act in good faith at the time the in the performance of the contract.

10    127.    Defendants and each of them, had a duty not to act unreasonably in breaching

11    the contract.

12    128.    As an actual, direct and proximate result of defendants' conduct, Plaintiffs

13    suffer, all to their damage according to proof.

14

**NINTH CAUSE OF ACTION**
(By All Tenant Plaintiffs Against All Defendants)
(Unfair Business Practices, Business & Professions Code
Sections 17000 *et seq.* 17070, 170820)

15

16

17    129.    Each Tenant Plaintiff realleges and incorporates by reference paragraphs 1

through 91, inclusive, as if fully set forth in this paragraph.

18

130.    The above-described acts, omissions and practices of Defendants was unfair,

19

dishonest, deceptive, fraudulent and discriminatory practices prohibited by Business &

20

Professions Code Section 17000, et seq. and calculated to perpetuate the illegal, uninhabitable

21

conditions of the premises while charging rent and channeling rental funds for the exclusive

22

benefit of Defendants and others, leaving no funds available to make the repairs necessary to

23

render 3501 San Pablo Avenue, Oakland, California habitable.

24

38

1    131.    Plaintiffs are informed and believe and thereon allege that Defendants
2    committed the above-described acts, omissions and practices for the purpose of injuring
3    Plaintiffs and competitors.

4    132.    As a proximate result of the above-described acts, omissions and practices of
5    Defendants, each Plaintiff has incurred general and special damages in an amount within the
6    jurisdiction of this Court and subject to proof at trial.

7    133.    Unless Defendants are enjoined from continuing their above-described course
8    of conduct, Tenant Plaintiffs, and, on information and belief, Defendants' competitors and the
9    general public, will suffer irreparable injury in that, among other things, Defendants will
10   continue to obtain an unfair advantage over competitors, continue to frustrate the enforcement
11   of housing laws; and continue to reap large amounts of financial benefit from the buildings'
12   continuing slum character.

13                            **TENTH CAUSE OF ACTION**
                     (By All Tenant Plaintiffs Against All Defendants)
14                            (Negligence – Personal Injury)

15   134.    Each Tenant Plaintiff realleges and incorporates by reference paragraphs 1
16   through 91, inclusive, as if fully set forth in this paragraph.

17   135.    Defendants, by their conduct as alleged herein, negligently and carelessly
18   operated, managed, maintained, owned and/or controlled the subject premises. Defendants
19   created and/or allowed a dangerous condition to exist on said subject property. Defendants
20   knew of said dangerous condition, and did nothing to prevent harm or warn Plaintiffs or any
21   invitees or guests or licencees of said dangerous condition. Defendants had the opportunity
22   and ability to correct the dangerous conditions and failed to do so. One dangerous condition
23   among others was infestation of insects and rodents on the subject property. Plaintiffs suffered
24

39

1  from bites from bedbugs, spiders, and other insects. As a result of this dangerous condition on

2  the premises, Plaintiffs were marked and scarred among other injuries and damages including

3  medical bills and other damages.

## ELEVENTH CAUSE OF ACTION
### (By All Tenant Plaintiffs Against All Defendants)
### (Private Nuisance – Intentional)

6      136.   Each Tenant Plaintiff realleges and incorporates by reference paragraphs 1

7  through 91, inclusive, as if fully set forth in this paragraph.

8      137.   The building at 3501 San Pablo Avenue, Oakland, California is being

9  maintained and utilized in violation of Civil Code Section 3479, in that Defendants have failed

10  and refused to correct the numerous Building Code violations.

11      138.   The aforementioned maintenance of the building at 3501 San Pablo Avenue,

12  Oakland, California by Defendants constitutes a nuisance, within the meaning of Civil Code

13  Section 3479, in that said defective conditions were and are injurious to the health, safety and

14  welfare of the tenants, those people being allowed currently into the building, and at the same

15  time, is indecent and offensive to the senses, and interferes with tenants' comfortable use and

16  enjoyment of the premises. Said nuisance has a deleterious effect and causes injury in

17  particular to the tenants.

18      139.   Defendant Owners, their agents and Does I and II have intentionally and

19  willfully failed and refused, and continue to fail and refuse, to abate the conditions rendering

20  the premises a nuisance.

21      140.   As a proximate result of the nuisance created by Defendants, individually

22  named Tenant Plaintiffs and those who are occupants of the building at 3501 San Pablo

23

24

40

1  Avenue, Oakland, California have sustained injury to their health, offense to their senses and

2  interference with comfortable and quiet use and enjoyment of life and property.

3      141.  The individually named Tenant Plaintiffs who are occupants of the building at

4  3501 San Pablo Avenue, Oakland, California are suffering irreparable injury, in that the

5  usefulness and economic value of their property will be substantially diminished, and they are

6  deprived of the comfortable and quiet use and enjoyment of property. Plaintiffs' health and

7  safety will continue to be threatened.

8      142.  All Defendants have been notified of the defects and have refused to correct the

9  defects at the California Hotel, 3501 San Pablo Avenue, Oakland, California. Defendants'

10  actions are malicious, intentional and oppressive and lead Plaintiffs to seek punitive damages.

11  

**TWELFTH CAUSE OF ACTION**
(By All Tenant Plaintiffs Against All Defendants)

12  (For Accounting)

13      143.  Each Tenant Plaintiff realleges and incorporates by reference paragraphs 1

14  through 91, inclusive, as if fully set forth in this paragraph.

15      144.  On or about April 1, 1989, Defendants Cahon and Hyson entered into the

16  Agreement to provide low-income housing for residents of Oakland, California and to operate

17  the California Hotel, 3501 San Pablo Avenue, Oakland, California as a very low-income

18  residence for very low-income tenants for thirty (30) years.

19      145.  Tenant Plaintiffs are third party beneficiaries of the Agreement and are seeking

20  to enforce the Agreement made by Defendants Cahon, Hyson.

21      146.  In 1996, Oakland Community Housing, Inc. became the agent of Cahon

22  Associates for the California Hotel. Defendants' obligations under the Agreement are to

23

24

41

1  provide low-income housing to Tenant Plaintiffs at the California Hotel and to protect the
2  property for the use of the tenants.

3      147.    Pursuant to that Agreement, Defendant Owners received over Seven Million
4  Dollars ($7,000,000) in tax credits for the CTCAC for maintaining and operating the California
5  Hotel from 1989 to 2019. Defendant Owners also received over Two Million Dollars
6  ($2,000,000) from the City of Oakland as loans to operate the California Hotel for Tenant
7  Plaintiffs. See Exhibit B, Regulatory Agreement.

8      148.    On or about June 1, 2007, Defendant Owners stopped entering into new leases
9  to replace move-out tenants at the California Hotel. From 2003 to 2008, Defendant Owners
10 have collected over Four Million Dollars ($4,000,000) in rent from low-income tenants at the
11 California Hotel.

12     149.    On June 20, 200&, Defendant Owners gave notices to Tenant Plaintiffs that they
13 do not have the funds to operate the California Hotel and will cease operations at 3501 San
14 Pablo Avenue, Oakland, California on July 15, 2008.

15     150.    Defendant Owners have received allocations of monies from the State of
16 California; loans from the City of Oakland; and seventeen (17) years of rent monies from low-
17 income tenants at the California Hotel, which total approximately Twenty-Seven Million
18 Dollars ($27,000,000) to manage and operate the California Hotel for thirty (30) years.

19     151.    The amount of money that Defendant Owners have to operate the California
20 Hotel is unknown to Tenant Plaintiffs and cannot be ascertained without an accounting of
21 receipts and expenditures for the California Hotel. This accounting is necessary to ascertain if
22 Defendant Owners are able to continue operating the California Hotel.

23

24

42

1      152.    On or about June 30, 2008, Tenant Plaintiffs demanded an accounting of all

2    receipts and income from rents for the period January 1, 1992 to the present; all funds received

3    from the City of Oakland for the period 1992 to the present; all credits and funds received from

4    tax allocation sources for the period 1992 to the present; and all expenditures for operation of

5    the California Hotel from January 1, 1992 to the present.

6                                        PRAYER

7          WHEREFORE, PLAINTIFFS PRAY judgment against Defendants, and each of them as

8    follows:

9          A. For a judgment for retroactive rent abatement for each Tenant Plaintiff;

10         B. For a judgment that each of the apartments listed in the Complaint is and at all

11   material times was uninhabitable and that each of the Tenant Plaintiffs suffered damages by

12   reason of such uninhabitability during the period that he or she resided in any of said buildings,

13   and thereafter, for an order providing for the means of determining individual damages either

14   by reference or by such other means as the Court shall find appropriate;

15         C. For all damages, general and special;

16         D. For punitive or exemplary damages for all Tenant Plaintiffs against all Defendants;

17         E. That the Court award attorney fees and costs pursuant to, among other things, Code

18   of Civil Procedure Sections 1021.5 and 2033 and Civil Code Section 1717;

19         F. For injunctive relief from all code violations against Defendants and order repairs

20   including R&TC Section 17058 and the Agreement;

21         G. For an accounting by Defendant Owners of all receipts for income, funds and credits

22   and all receipts for expenditures for operation of the California Hotel; and

23         G. For such other and additional relief as may be proper and just.

24

43

1   Dated: July      , 2008

JOHN MURCKO, ESQ.
Attorney for Plaintiffs

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

44

LEASE - RENTAL AGREEMENT

Agreement, made this ____ 31st ____ day of ____ July ____

by and between CAHON - associates ("Owner") and

Tom Scoggins ("Tenant(s)") witnesseth the

ment of the parties that:

EMISES: Owner leases to Tenant and Tenant lease from Owner the
ses situated in the City of Oakland, County of Alameda, State of California,
bed as Room Number ____ located at 3501 San Pablo Avenue, and
as the furnishings and equipment specified in the "Move-In/Out Inspection
, attached to and made a part of this Agreement.

M: The term hereof shall commence on 31st July
__ and continue until Jan 01 20 04 (6 Months)
ster the term will continue on a month-to-month basis until either
terminates the same by giving the other party thirty (30) days
s notice.

IT: Rent shall be $ 371 per month. Rent is payable in advance
first day of each calendar month to California Hotel at 3501 San Pablo
a (Rental Office), Oakland, California 94608. Money orders or Cashiers
s should be made out to California Hotel. Cash and personal checks will
accepted. On the sixth day of the month the rent will be considered delinquent
00 fee will be charged and the Tenant shall be in breach of this
nent. In the event of such a breach, the Owner has the option to immediately
ate this Agreement per Section 20.

2UPANTS: Premises shall be occupied only by the following named
s. Tenant must inform management of ANY CHANGES IN OCCUPANCY
remises.

Tom Scoggins

AGE AND SECURITY DEPOSIT: Tenant has deposited with Owner
of $ ____ .00 as a security deposit for the full performance and
nce of each of the provisions in this Agreement. If the Tenant defaults on this
ent, Owner may retain the whole or any part of the security deposit to defray any
s reasonably incurred by reason of the default, or to pay any sum due to the Owner,
n of the default. At the end of the term of this Agreement, or any extension hereof,
t is not in default the security deposit shall be returned to Tenant, less reasonable
s incurred by Owner to repair any damages to the premises, reasonable wear and
epted. Should damages exceed the security deposit, Tenant shall be responsible
tal amount of the damage. Tenant shall not have the right to apply the
deposit in payment of the last month's rent. The balance of all deposits
refunded within twenty-one (21) days from the date possession is delivered to Owner or
authorized agent, together with a statement showing any charges made against such
by Owner.

TPLE OCCUPANCY: It is expressly understood that this Agreement is between
d each signatory individually and severally. In the event of default by any one signatory,
every remaining signatory shall be responsible for timely payment of rent and all other
s of this Agreement. Residents must report any household changes to the
vent. Failure to do so may result in eviction procedures.

The premises shall be used as a residence by the undersigned
with no more than ____ adults and ____ child(ren), and for
urpose, without prior written consent of the Owner. Guests may
ight for two (2) nights per calendar week, with prior written consent
ager and pay a $7.50 per night surcharge.

8. UTILITIES: All utilities are paid by Landlord. Telephone and Cable
service is not included.

9. KEYS: Owner shall provide Tenant(s) a unit entry key, and mailbox key,
at no extra charge. Tenant shall pay a $7.50 replacement charge per key
for any lost key. Resident agrees not to install additional or different
locks or gates on any doors or windows of the unit without the written
approval of the Landlord.

10. INCAPACITATED TENANT: If the the Tenant becomes
incapacitated in such way that he or she can no longer maintain independent
living status, it will be necessary for the Tenant to vacate the dwelling unit and
move to another facility such as a board and care home or a nursing home
that can best meet the Tenant's needs. In the case of contagious disease,
the Landlord can require immediate transfer to suitable facility. The Tenant
may maintain occupancy rights to the dwelling unit during the temporary illness
requiring transfer to other facilities. If Tenant vacates the unit and transfers
to another facility for health reasons, and subsequently regains capacity
for independent living, the Tenant may be given priority for a living unit in
this development if he or she desires.

11. ACCURACY OF INFORMATION: It is expressly understood that
the Owner has entered on to this Agreement on the basis of information
provided by Tenant regarding Tenant's income and financial status. If
any such information provided by Tenant was or is inaccurate, such
fact shall represent a non-curable breach or a condition of this Agreement,
and Owner may, at its option, terminate all rights of Tenant hereunder.

12. ANNUAL RECERTIFICATION: Every year around 90 days from
the Resident's anniversary date the Landlord will request the Resident to
report the income and composition of the Resident's household and to
supply any other information required to determine the Resident's eligibility.
The Resident agrees to provide accurate statements of this information and
to do so by the date specified in the Landlord's request. The Landlord
will verify the information supplied by the Resident and use the verified
information to determine your continued eligibility to remain a Resident
at the California Hotel.

13. REPORTING CHANGES BETWEEN REGULARLY
SCHEDULED RECERTIFICATION: If any of the following changes
occur, The Resident agrees to advise the Landlord immediately in writing.

14. PROHIBITED USES: Tenants shall not do anything or keep anything
on the premises which will in any way increase the existing rate of fire or other
insurance upon the premises, or cause a cancellation of any insurance policy
covering the premises. Tenant shall not use the premises in a manner which
conflicts with any law, statute, ordinance, or governmental rule or regulation
now in force or which may hereafter be enacted. Please refer to the House
Rules and Regulations which are attached.

15. ALTERATIONS: Tenant shall not make any alterations, additions,
or improvements to the premises without the prior written consent of Owner.

16. LIENS: Tenant shall keep the premises and the property in which the
premises are situated free from any liens arising out of any work performed,
materials furnished or obligations incurred by Tenant.

17. ASSIGNMENT AND SUBLETTING: Tenant shall not assign,
transfer, mortgage, pledge, hypothecate, or encumber this Agreement, and
shall not sublet the premises or allow any other person to occupy or use the
premises. Any assignment or subletting of the premises by Tenant shall be
grounds for Owner's immediate termination of this Agreement and shall be
void. No interest of Tenant in this Agreement shall be assignable by operation
law.

Exhibit A.

; unless otherwise indicated. Tenant shall, at his/her own expense and at all tim...
sin the premises, including all equipment, appliances, and furnishings
n, in a clean and sanitary manner, and shall surrender same at termination of this
ment in as good condition as received, normal wear and tear excepted. Tenant shall be
nsible for damages caused by his/her negligence and that of his/her family, invitees,
uests. Tenants shall be responsible for any cleaning, extermination, or fumigation
red necessary by the acts or negligence of the Tenant. Tenant shall not paper
or otherwise redecorate or make alterations to the premises without the prior, written
nt of the Owner.

AMAGES: Whenever damage is caused by carelessness, misuse, or neglect on
rt of the Resident, his/her family, visitors or any person under the Resident's control
ermission, the Resident agrees to pay:

cost of all repairs and do so within 30 days after receipt of the Landlord's
nd for the repair charges: and

t for the period the premises is damaged whether or not the premises
itable.

NTRY BY OWNER: Owner or Owner's authorized agent reserves and shall
imes have the right to enter the premises during normal business hours,
iving Tenant 24 hours written notice, to inspect the premises, supply any service
rovided by Owner to Tenant hereunder, exhibit the premises to prospective renters,
dees, or nonresponsibility, or alter, improve or repair the premises. Owner may also
h purposes erect scaffolding and other necessary structures where reasonably
d by the character of the work to be performed. Tenant hereby waives any claim
dament or rent or damage or loss or occupancy or quiet enjoyment of the premises
other occasioned hereby. In the event or any emergency, Owner or Owner's authorized
shall have the right of immediate entry to the premises.

y termination of this Agreement by the Landlord must be carried out in accordance with
ind local laws, and the terms of this Agreement. The Landlord may terminate this
nent for the following:

\MAGES TO PREMISES: In the event the premise are damaged by fire or other
ty, Owner shall have the option either to repair damage or restore unit, this Agreement
ting in full force and effect, or in the event of material damage rendering the premises
itable, to give notice to Tenant at any time within ten (10) days after such damage
ding this Agreement as of a date to be specified in such notice. In the event of the
of such notice, Agreement shall expire and all interest of the Tenant in the premises
rminate. Owner shall not be required to repair any damage by fire or other cause, or
e any repairs or any property installed in the premises by Tenant.

23. UNLAWFUL ACTIVITIES: The Tenant agrees upon threat of
eviction not to:

mit guests or other household members to engage in Unlawful Activities
inti, in the common areas, or the project ground. These Unlawful
es include but but are not limited to the possession, use and/or sale of
drugs and disturbances or acts of violence that damage or destroy
eting unit or disturb or injure other Tenants.

Tenant agrees not to engage personally in Unlawful activities in the
es or common areas. Such activities include but are not limited to those
1 a., above.

TOURNEY'S FEES: In the event of any action or proceeding brought by
arty, the prevailing party waives the right to seek a tourney's fees as
he costs incurred in connection with any such action.

any term, covenant or condition herein contained shall not b
deemed to be a waiver of any subsequent breach of the sa
of any other term, covenant or condition herein contained.

26. SUCCESSORS AND ASSIGNS: The Owner herein covenants
by and for himself, his heirs, executors, administrators and
assignee, and all persons claiming under or through him, and this
lease is made and accepted upon and subject to the following
conditions:

"That there shall be no discrimination against or segregation
of any person or group of persons, on account or race, color,
creed, religion, sex, sexual orientation, martial status, family status
(children or no children), national origin or ancestry. Acquired
Immune Deficiency Syndrome (AIDS) or AIDS related condition
(ARC), physical handicap, in the leasing, subleasing, transferring,
use, occupancy, tenure, or enjoyment of the premises herein
leased nor shall the owner or person claiming under or through
owner establish nor permit any such practice or practices of
discrimination or segregation with reference to the selection of
location, number;-use or occupancy or tenants, leasees,
subtenants, subleasees in the premises herein leased."

"Owner is an equal opportunity housing provider"

27. PENALTIES FOR SUBMITTING FALSE INFORMATION: If
the Tenant deliberately submits false information regarding income,
family composition, or other data on which the Tenant's eligibility
or rent is determined, the Owner may require the Tenant to pay a
fair and reasonable market rent for as long as the Tenant remains
in the project. In addition, the Tenant could become subject to
penalties available under Federal Law. Those penalties include
fines up to $10,000.00 and imprisonment for up to five years.

28. MODIFICATION: This instrument contains all of the agreements
and conditions made between the parties to this lease and may not
be modified orally or in any other manner than by agreement in
writing signed by all the parties to this lease or their respective
successors in interest.

29. WAIVER OF CLAIMS: Owner shall not be liable to Tenant and
Tenant waives all claims against Owner for any injury or damage
to any person or property upon the premises from any cause
whatsoever except that any injury or damage to any person or
property upon the premises is caused by the Owner's own
negligence.

31. RULES AND REGULATIONS: Resident is responsible for
being aware of and abiding by all rules and regulations promulgated
by Owner, including but not limited to, those which are attached
hereto. Failure to comply with these Rules and Regulations will be
considered a breach of this Agreement.

This Agreement is governed by the laws of the State of California
and any question arising hereunder shall be determined according
to such law.

Tenant Signature                              Date

Tenant Signature                              Date

LANDLORD: CALIFORNIA HOTEL
By: Oakland Community Housing Management, Agent

Date: 7/21/03
HOTEL ADMINISTRATOR

92186582

RECEIVED

'JUL 2   1992

TCAC

RECORDED IN OFFICIAL RECORDS
OF ALAMEDA COUNTY, CALIF.
At 8:30 A.M.

JUN 11 1992

PATRICK O'CONNELL
COUNTY RECORDER

Recording requested by and when
recorded mail to:

Tax Credit Allocation Committee
915 Capitol Mall, Room 485
Sacramento, CA 95814

**D.**⊢⌐

Free Recording Requested        Space above this line
In Accordance With               for Recorder's use
Government Code 6103

## REGULATORY AGREEMENT

This Regulatory Agreement (this "Agreement") is made between
the Tax Credit Allocation Committee ("TCAC"), established under
Section 50185 of the Health and Safety Code of the State of
California, and CAHON Associates ("Owner") and is dated as of
December 31, 1991. The Owner has requested and TCAC has authorized
an allocation relating to the low-income housing credit under the
provisions of Sections 17058 and 23610.5 of the Revenue and
Taxation Code of the State of California (the "Tax Credit"). The
Tax Credit relates to a multifamily rental housing project known as
California Hotel identified in the records of TCAC by TCAC# CA-89-
080 and located on the real property described in Exhibit A of this
Agreement (the "Project"). Sections 17058(i) and 23610.5(i) of the
Revenue and Taxation Code of the State of California require the
Owner and TCAC to enter into this Agreement relating to the Tax
Credit requirements. Accordingly, in consideration of the
allocation relating to the Tax Credit by TCAC, the Owner and TCAC
hereby agree as follows:

Section 1. **Definitions.** Unless the context otherwise
requires, capitalized terms used in this Agreement shall have the
following meanings:

"Agreement" means this Regulatory Agreement between TCAC and
the Owner.

"Area Median Gross Income" means the median gross income of
the area in which the Project is located as determined by the
Secretary in a manner consistent with the determination of median
gross income under Section 8 of the Housing Act, with adjustments
for family size and adjustments for areas with unusually low family
income or high housing costs relative to family income.

"Code" means those provisions of the Internal Revenue Code of
1986 as amended and regulations relating thereto which are
applicable to the Project.

"Compliance Period" means 30 consecutive taxable years
beginning with the first taxable year of the Credit Period.

Exhibit B

92186582

"Credit Period" means, with respect to the State Tax Credit, the period of four taxable years beginning with the taxable year the Project is placed in service or (at the election of the Owner) the succeeding taxable year or (in the case of an allocation subject to Section 17058(n) of the Revenue and Taxation Code) the first taxable year beginning after December 31, 1989.  The Owner hereby irrevocably elects to begin the Credit Period during the taxable year ending _____1990_____.

"Economically Feasible" means that Project revenues equal or exceed the reasonable expenses necessary to operate and maintain the Project in habitable condition, to pay debt service and taxes, and to maintain reasonable reserves.  In determining whether the Project is Economically Feasible, no return on investment shall be included as an offset of Project revenue.  For purposes of this test, "debt service" shall not include that portion of payments of principal and interest attributable to any excess refinanced principal over the outstanding principal of the loan that was refinanced.

"Gross Rent" means all rentals paid by a Tenant, including the amount paid by the Tenant to the Owner or its designee for utilities and any other mandatory fees paid by the Tenant to the Owner, but excludes any payment under Section 8 of the Housing Act or any comparable federal rental assistance program or other rental assistance program allowed to be excluded under Section 42(g)(2) of the Code.  If the Tenant pays his or her utilities directly, Gross Rent shall include any utility allowance prescribed by the Secretary.

"Housing Act" means the United States Housing Act of 1937, as amended, and any regulations pertaining thereto.

"Income" means the gross income of a Low-Income Tenant determined in a manner consistent with the requirements of section 142(d)(2)(B) of the Code.  Income shall be determined at the time a Low-Income Tenant begins occupancy and shall be redetermined at least annually.

"Low Income" means, with respect to any tenant, an income level, not exceeding 60% of Area Median Gross Income.

"Low-Income Tenant" means a Tenant who, when the Tenant originally occupied the Unit, had an Income qualifying as Low Income.  A Tenant will no longer qualify as a Low-Income Tenant if the Tenant's most recent Income exceeds 140% of Low Income.

92186582

"Low-Income Unit" means a Unit in the Project that is occupied
by a Low-Income Tenant and is Rent-Restricted. However, if the
Unit was a Low-Income Unit at the last annual income certification
but the Tenant of the Unit is no longer a Low-Income Tenant, it
will continue to be treated as a Low-Income Unit until the next
available Unit of comparable or smaller size is rented to a Low-
Income Tenant. If such rental does not return the total number of
Low-Income Units to the Minimum Amount, then the Unit will continue
to be treated as a Low-Income Unit until the next available Unit of
comparable or smaller size is rented to a Low-Income Tenant, and so
forth. A Low-Income Unit that is no longer occupied by the Low-
Income Tenant will continue to be treated as a Low-Income Unit
provided no other Units of comparable or smaller size in the
Project are rented to Tenants who are not Low-Income Tenants and,
if the Unit is vacated, reasonable attempts are made to rent the
unit. In no case will a Unit be treated as a Low-Income Unit if
all the Tenants of the Unit are students (as determined under
Section 151(c)(4) of the Code), no one of whom is entitled to file
a joint income tax return.

"Minimum Amount" means the number of Units in the Project
required to be Low-Income Units. The minimum amount for this
project is 100% of the units.

"Owner" means CAHON Associates, or successors.

"Project" means the residential rental housing project known
as California Hotel, TCAC # CA-89-080 and located on the real
property described in Exhibit A.

"Qualified Low-Income Housing Project" means a residential
rental project consisting of buildings or structures, together with
functionally related and subordinate facilities, containing one or
more similarly constructed Units available to members of the
general public as rental Units and used on other than a transient
basis. Factory-made housing that is permanently affixed to real
property may qualify as Qualified Low-Income Housing Projects.
Hotels, motels, dormitories, fraternity and sorority houses,
rooming houses, hospitals, nursing homes, sanitariums, rest homes,
retirement homes, lifecare facilities, and trailer parks and courts
for use on a transient basis are not Qualified Low-Income Housing
Projects. However, single room occupancy housing used on a non-
transient basis (e.g., with an initial lease term of six months or
greater) may be treated as a Qualified Low-Income Housing Project
even though the housing may provide eating, cooking, and sanitation
facilities on a shared basis. Buildings located on separate
parcels of land that have similarly constructed Units may be
treated as part of the same Qualified Low-Income Housing Project if
they are owned for federal tax purposes by the same person and if
they are financed pursuant to a common plan. A Qualified Low-
Income Housing Project may not consist of fewer than five Units if
one of the Units is occupied by the owner or a related person.

Page 4
TCAC# CA-89-080

92186582

"Rent-Restricted" means, with respect to any Unit, that the Gross Rent with respect to such Unit is not more than 30% of 60% of Area Median Gross Income.

"Secretary" means the Secretary of the Treasury of the United States.

"Tax Credit" means the low-income housing credit under the provisions of Sections 17058 and 23610.5 of the Revenue and Taxation Code of the State of California with respect to the Project.

"TCAC" means the Tax Credit Allocation Committee and its successor.

"Tenant" means the individual or individuals entitled to occupy a Unit in the Project by lease or other legal relationship with the Owner.

"Unit" means any unit in the Project consisting of an accommodation containing separate and complete facilities for living, sleeping, eating, cooking, and sanitation; provided, however, that single room occupancy housing used on a nontransient basis may be treated as one or more Units even though the housing may provide eating, cooking, and sanitation facilities on a shared basis.

Section 2. <u>Term</u>. This Agreement shall have a term equal to the Compliance Period.

Section 3. <u>Filing</u>. This Agreement shall be recorded in the official records of the County of Alameda in which the Project is located.

Section 4. <u>Qualified Low-Income Housing Project</u>. The Owner shall maintain the Project as a Qualified Low-Income Housing Project for the entire Compliance Period, beginning not later than the close of the first year of the credit period. In addition, the Owner shall operate the Project such that at least the Minimum Amount of the Units in the Project are Low-Income Units.

Section 5. <u>Annual Determinations</u>. At least annually the Owner shall determine and certify the Income of each Low-Income Tenant and shall determine whether at least a Minimum Amount of the Units of the Project are Low-Income Units. The Owner shall annually certify to the TCAC (on such forms as are prescribed by the TCAC) that at least the Minimum Amount of the Project continues to be Low-Income Units. TCAC may accept copies of the most recent certification to the Secretary.

Page 5
TCAC# CA-89-080                                      92186582

Section 6. <u>Residential Rental Requirements</u>. The Owner will hold all Units in the Project continually open for rental purposes during the Compliance Period and take affirmative steps to seek qualified tenants.

Section 7. <u>Limit on Cashflow.</u> The Owner shall be entitled to receive an annual cash distribution form the operation of the Project, after funding required reserves, equal to the greater of

(A) 8 percent of the lesser of (i) the Owner's capital contributions actually paid in (excluding any amounts represented by an investor note until actually paid) or (ii) 20 percent of the adjusted basis of the Project at the close of the first year of the Credit Period; or

(B) the amount of net cash flow from the Units in the Project that are not Low-Income Units (determined after allocating operating costs using the floor space fraction described in section 42 of the Code).

If the amount allowed to be distributed under (A) above is greater during any of the first 5 years of the Compliance Period than the amount actually available to be distributed, the excess allowable distribution may be accumulated and distributed at any time during the first 15 years of the Compliance Period. This limitation on return shall apply in the aggregate to all partners or shareholders of the Owner. The Owner shall apply any cash available for distribution in excess of the limits described above to reduce the rent on the Low-Income Units or to increase the number of Low-Income Units.

Section 8. <u>Reduction in Low-Income Units.</u> If, after the first 18 years of the Compliance Period, the Project is not Economically Feasible, the Owner shall be entitled to reduce the Minimum Amount by one or more Units as is necessary for the Project to become Economically Feasible. Once the Project is again Economically Feasible, the Owner shall increase the Minimum Amount and only rent the next available Units to Low-Income Tenants (such that they qualify as Low-Income Units); up to the original Minimum Amount, while keeping the Project Economically Feasible. The Owner shall notify the TCAC or its designee if the Owner intends to reduce the Minimum Amount pursuant to this section. Notification to the TCAC will be made 30 days prior to the date the Owner plans to reduce the Minimum Amount of Units.

Section 9. <u>Notification of Noncompliance.</u> The Owner shall notify the TCAC or its designee if there is a determination by the Internal Revenue Service that the Project is not in compliance with Section 42(g) of the Internal Revenue Code. Notification to the TCAC will be made within ten business days of receipt of the above IRS determination.

92186582

Section 10. <u>Security for Performance</u>. The Owner hereby assigns its interest in the rents from the Project to the TCAC as security for the performance of the Owner's obligations under this Agreement. However, until and unless the Owner defaults in its obligations under this Agreement, the Owner is entitled to collect and retain such rents.

Section 11. <u>Remedies</u>. In the event the Owner defaults in its obligations under this Agreement and such default is not cured within a reasonable time period, the remedies of TCAC and the Tenants shall include, but are not limited to, the following:

a. collecting all rents with respect to the Project;

b. taking possession of the Project and operating the Project in accordance with this Agreement until the Owner is in a position to operate the Project in accordance with this Agreement;

c. applying to any court for specific performance;

d. securing the appointment of a receiver to operate the Project; or

e. any other relief as may be appropriate.

Section 12. <u>Enforceability</u>. This Agreement may be enforced by TCAC or its designee in the event the Owner fails to satisfy any of the requirements of the Agreement. In addition, the Agreement shall be deemed a contract enforceable by one or more Tenants, or by persons meeting the Low Income restriction, whether past, present, or prospective Tenants, as third-party beneficiaries of the Agreement. In the event the Owner fails to satisfy the requirements of this Agreement and legal costs are incurred, such legal costs, including attorney fees and court costs, are the responsibility of the Owner.

Section 13. <u>No Conflicting Agreements.</u> The Owner warrants that it is not bound by and will not execute any other agreement with provisions that bind it to violate the provisions of this Agreement; however, with the approval of TCAC, it may be subordinated, if required, to any lien or encumbrance of any banks or other institutional lenders to the project.

Section 14. <u>Successors Bound</u>. Subject to Section 16, this Agreement and the covenants and conditions contained herein shall run with the land and shall bind, and the benefits shall inure to, respectively, the Owner and its successors and assigns and all subsequent owners of the Project or any interest therein, and TCAC and its successors and assigns, for the compliance period. Upon termination of this Agreement, the covenants and conditions contained herein shall expire.

92186582

Section 15.  Amendments; Waivers.  Except as otherwise
provided in this Agreement, this Agreement may not be amended,
changed, modified, altered or terminated except by written
instrument executed and acknowledged by each of the parties hereto
or their successors and duly recorded in the official records of
the county in which this Agreement is recorded.  Any waiver of any
provision of this Agreement shall not be deemed to be an amendment
hereof.

Section 16.  Assignment by Owner.  Upon sale or transfer of
the Project, the Owner shall be relieved of all obligations under
the Agreement and the transferee shall be bound by all of the
Owner's rights and obligations.  The Owner shall notify TCAC of any
transfer of the project and provide the names and addresses of the
new owner and operator.  Changes in the constituents of the Owner
shall not constitute a default under this Agreement.

Section 17.  Notices.  All notices, certificates or other
communications shall be sufficiently given and shall be deemed on
the second day following the date on which the same have been
mailed by certified mail, postage prepaid, or sent by other method
which produces evidence of delivery thereof, addressed as follows:

To the TCAC:    Tax Credit Allocation Committee
                915 Capitol Mall, Room 485
                Sacramento, CA 95814

To the Owner:   CAHON Associates
                c/o Oakland Community Housing Inc.
                ~~330 15th Street~~  405 14th Street, Suite 400
                ~~Oakland, CA 94612~~

The TCAC and the Owner may, by notice given
hereunder, designate any further or different addresses to which
subsequent notices, certificates or other communications shall be
sent.

  
Page 8
TCAC# CA-89-080

Section 18. <u>Severability</u>. The invalidity of any clause, part
or provision of this Agreement shall not affect the validity of the
remaining portions thereof.

IN WITNESS WHEREOF, the parties hereto have caused this
Agreement to be signed by their respective duly authorized
representatives, as of the day and year first written above.

TAX CREDIT ALLOCATION COMMITTEE

[SEAL]                          By _____
                                      Executive Director

                                CAHON ASSOCIATES

                                By _____
                                      (Owner)

                                Greg Hyson, Assistant Secretary, Cahon, Inc. its
                                _____ Managing General Partr
                                (Please type or print name)

The undersigned, owners of the property described on <u>Exhibit A</u>
hereto, hereby consent to recordation of this Regulatory Agreement
against such property, and agree that such property shall be bound
by the provisions thereof.

                                CAHON ASSOCIATES

                                By _____

EXHIBIT A
to Regulatory Agreement


Description of the real property
on which the Project is located

Location:        3501 San Pablo Ave.
                 Oakland, CA 94608

Legal
Description:     See Attached

Project
Size
Description:     1  Building; 150 Low-Income Units
                 16 Studio; 75 SRO; 58 Efficiency

92186582

### EXHIBIT "A"

The land referred to in this policy is situated in the County of Alameda, City of Oakland, State of California, and is described as follows:

Parcel 1:

Lots 2, 3, 4, 5, 6, 7, 8, 9, 10, 25, 26, 27, 28, 29, 30 and 31 in Block 683, as said Lots and Block are shown on the Map entitled "Map of the Glascock Tract, Oakland," etc., filed July 16, 1877 in Book 5 of Maps at Page 21 in the Office of the County Recorder of Alameda County.

Parcel 2:

All that portion of Lot 1 in said Block 683, that lies Southerly of a line drawn from a point on the Western line of San Pablo Avenue, distant thereon Southerly, 129 feet, 8 inches from the point of intersection thereof with the Eastern line of Chestnut Street, as said Avenue and Street are shown on the Map hereinafter referred to, Westerly in a direct line to a point on the said Eastern line of Chestnut Street, distant thereon Southerly 139 feet, 8 inches from the point of intersection thereof with the said Western line of said San Pablo Avenue, as said Lots and Block are shown on the Map herein referred to.

Parcel 3:

A portion of Lot 1 in Block 683, as said Lot and Block are shown on the "Map of the Glascock Tract, Oakland," filed July 16, 1877 in Book 5 of Maps at Page 21 in the Office of the County Recorder of Alameda County, more particularly described as follows:

Commencing at the most Easterly corner of that parcel of land described in Deed Number 18224 to the State of California recorded April 28, 1959 in Volume 9008 at Page 19, Official Record of Alameda County; thence along the Southerly line of said parcel South 84°08'15" West, 71.11 feet to the Westerly line of said parcel, being also the Easterly line of Chestnut Street; thence along last said Easterly line, North 17° 06' 13" East, 31.71 feet, thence from a tangent that bears South 69° 57' 30" East, along a curve to the right with a radius of 3,574.00 feet, through an angle of 1° 03' 06", an arc length of 65.60 feet to the point of commencement.

92186582

### ACKNOWLEDGEMENT

STATE OF CALIFORNIA          )

COUNTY OF SACRAMENTO         )


On this 14th day of May, in the year 1992, before me, Bonnie M. Phillips personally appeared Ronne Thielen, personally know to me (or proved to me on the basis of satisfactory evidence) to be the person who executed the foregoing instrument as Executive Director of the Tax Credit Allocation Committee and acknowledged to me that the Tax Credit Allocation Committee executed it.

Given under my hand and official seal this 14th day of May, 1992.

OFFICIAL SEAL
BONNIE M. PHILLIPS
NOTARY PUBLIC-CALIFORNIA
SACRAMENTO COUNTY
MY COMM. EXP. JUNE 13, 1994

Bonnie M. Phillips
_____
Notary Public

[SEAL]

My Commission Expires:

June 13, 1994

ACKNOWLEDGEMENT

92186582

STATE OF CALIFORNIA          )

COUNTY OF *HLAMEDA*          )

On this 1^st^ day of *April* in the year *1992*, before me, *Lily Mayumi Kimura*, personally appeared *Gregory Alan Gryson*, personally known to me (or proved to me on the basis of satisfactory evidence)  to be the owner(s) of *CALTON   ASSOC*, who executed the within instrument.

Given under my hand and official seal this 1^st^ day of *April*, *1992*.

[SEAL]

_____
            Notary Public

My Commission Expires:

*12-26-92*

OFFICIAL SEAL
LILY MAYUMI KIMURA
NOTARY PUBLIC-CALIFORNIA
COUNTY OF ALAMEDA
My Commission Expires Dec. 26, 1992



June 18, 2008

Dear Residents,

· The John Stewart Company will no longer be the management agent for your community effective
July 15, 2008.

It has been a pleasure working with you and we wish you the best.

You should be receiving further communication regarding ongoing management.

Sincerely,

The John Stewart Company

Loren Sanborn
Sr. Vice President

cc:  Charles Fowlkes
     Marge Gladman
     Christia Mulvey

Exhibit C

June 20, 2008

To All Residents of the California Hotel:

As described in the accompanying letter, John Stewart Company will no longer be managing the property as of July 15, 2008. Cahon Associates, Inc., the owner of the building, cannot afford to hire another management company to operate the California Hotel or subsidize the operating deficit that exists at the property. In addition, local and state law require onsite management for buildings the size of the California hotel. If the owner does not replace the onsite manager, the building will be out of compliance with local and state law.

As a result, the building may close down shortly after July 15th. Tenants should begin to look for another place to live and plan to vacate the building on or before July 15th. Eden Information & Referral (Eden I&R) will be available to provide some tenant assistance to help in your search for new housing. This assistance will include first and last month rent for your new housing (upon verification, a check would be provided directly to your new landlord) as well as help providing housing referrals. Tenants are responsible for signing up to meet with Eden I&R staff in order to receive these services.

**Please plan to attend a Community Meeting on Monday, June 23rd or Tuesday, June 24th at 6:30pm to learn about the assistance that will be available to you.** The meetings will be located in the lobby of the California Hotel. Staff from the City, Eden I &R, John Stewart Company and Lifelong Medical Care will be available to answer your questions. Food will be provided.

This is difficult news to receive. Support and assistance will be available to you throughout this transition. If you experience severe emotional distress, please contact the one of the following resources for guidance:

| | |
|---|---|
| *Alameda County Crisis Support Services Hotline:* | *1-800-309-2131* |
| *Oakland Mobile Crisis Units* | *1-510-268-7837* |
| *Alameda County Mental Health Access Line:* | *1-800-491-9099* |
| *Health, Housing & Human Services Hotline:* | *211* |

It is strongly recommended that you attend this important meeting on Monday or Tuesday to find out additional information about the assistance available to you.

1                                VERIFICATION

2          I, Bernadette Thompson      , depose and say:

3          1.      I am a Plaintiff in this case.

4          2.      I have read the foregoing Complaint for Damages. It is true and correct as to all

5    matters which are alleged herein, and for those alleged on information and belief which are

6    based on information and belief.

7          I declare that the preceding is true and correct under penalty of perjury. Executed on

8    __July 2,____, 2008. in Oakland, California.

9                                           Bernadette Thompson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24